No. 39,750

ETHEL E. STEELE, EDWIN C. PIXLEE, FRANKLIN PIXLEE, RILLAMAE PIXLEE PIERCE, JOHN WALLER PIXLEE, JR., GLORIETTA PIXLEE ROBINETT, BIRD HOCKADAY, KATE NANCY BOHART HUGHES, MARGARET BOHART MOBERLY, RICHARD H. ROBERTSON, EDNA E. RICHMOND, CURTIS W. ROBERTSON, CARRIE PETTY, PIXLEE PETTY, LEONA PETTY BRECKENRIDGE, HUGH PIXLEE, and MARJORIE BOHART PHILLIPS, Claimants, *Appellees*, v. EDWARD E. PEDROJA, as Ancillary Administrator of the Estate of Maude Shoemaker and Thomas J. Shoemaker, as Intervener, *Appellants*.

(289 P. 2d 738)

Opinion filed November 12, 1955.

*Douglas Hudson*, of Fort Scott, and *E. H. Hatcher*, of Topeka, argued the cause, and *Clay G. Rogers*, of Kansas City, Missouri, *Pross T. Cross* and *Gerald Cross*, of Lathrop, Missouri, and *Edward E. Pedroja*, of Eureka, were with them on the briefs for appellants.

*George C. Spradling*, of Wichita, argued the cause, and *Conn Withers* and *Alan F. Wherritt*, both of Liberty, Missouri, *John B. Ewing*, of Independence, Missouri, *Carl C. Chase*, of Eureka, *W. F. Lilleston*, *Henry V. Gott*, *George Stallwitz*, *Ralph M. Hope*, *Richard W. Stavely* and *Charles S. Lindberg*, all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: The legal questions presented in this appeal are: First, did a certain will create an estate tail in the daughter of the testator to certain Kansas land? And, second, are the claimants here estopped to claim otherwise by two certain prior actions, one in Missouri and one in Kansas?

The facts shown by the record necessary for determination of the questions presented, may be stated as follows:

William T. Pixlee, a resident of Clay County, Missouri, whose family consisted of his wife, Eva M. Pixlee, and one daughter, Maude Pixlee, was the owner of extensive property in Missouri and

4,400 acres of land in one body situated mostly in Greenwood County and partly in Lyon County, Kansas. On May 31, 1921, he executed his last will and testament in which he first directed that all his just debts be paid; second, he gave to his wife all of his household goods and equipment. The 3d, 4th and 5th paragraphs of the will read as follows:

"3. I give and devise to my said wife, all my real estate, for and during the term of her natural life, in lieu of dower and homestead and other marital rights. But at any time she desires to do so, and Hugh Pixlee agrees she may sell my home place in Liberty, Mo., and the Chanslor farm owned by me containing about 300 acres, and bought by me from the Chanslor and Mosby heirs, and being the Section 36, township 52, Range 31, in Clay County, Missouri, and the proceeds shall be added to the trust fund created in clause 5 hereof.

"4. I give and devise all my real estate, subject to said life estate, and the right in my said wife and said Hugh Pixlee, to sell the home property and the Chanslor farm, to my only living child, Maude Pixlee, and to her bodily heirs. If she should die without leaving bodily heirs, then I give and devise the remainder which would go to said bodily heirs, if such existed, to my brothers and sisters, in fee simple, in equal shares, the descendants of such of my brothers and sisters as may be dead at the date of the death of my said daughter, to take per stirpes the share such brother or sister would have taken, if living. If my said daughter should die prior to the death of my said wife, then possession of the real estate in this clause given to such devisees is postponed until the death of my wife. And in managing my lands, my wife and Hugh Pixlee may lease for oil in the usual manner, if they think best, the proceeds to go to the trust fund described in the next clause.

"5. All personal property not herein specifically given or bequeathed, shall be reduced to money, and such fund I give and bequeath to Hugh H. Pixlee, as trustee, he to loan and invest the same, and to keep the principal intact, and to increase the same by increment of interest earned, if he can. Of the interest and income received, he shall pay to my old colored hired man and faithful servant, Eillis Lee, annually the sum of One hundred dollars, during his lifetime, and his burial expenses, when he dies, the expenses to be incurred under the direction and control of my said trustee; and then to my wife during her lifetime any money she may need for her care or comfort, beyond the income from the real estate, and the trustee is instructed to be very liberal in such matters, and if she desires to make charitable gifts during her lifetime, not to exceed ten thousand dollars, my trustee shall allow her to do so and shall withdraw the amount so given from said trust fund. After her death, he shall pay such income to or use it for the benefit, care and comfort of my daughter Maude Pixlee, during her lifetime, and at her death, distribute the same absolutely, in equal shares, per stirpes, to the bodily heirs of my said daughter, Maude Pixlee. If she has no bodily heirs, then he shall distribute the same to my brothers and sisters absolutely, in equal shares, the descendants of such of my brothers and sisters as may be dead at the date of

the death of my said daughter, to take, per stirpes, the share of such brother or sister would have taken, if living. If my said daughter should die prior to the death of my said wife, then such distribution shall not be made until the death of my said wife."

The will contained other provisions with which we are not concerned. The testator nominated Hugh H. Pixlee, and his wife, Eva M. Pixlee, as executor and executrix of his will, and asked that they be allowed to act without bond.

The testator died November 28, 1921; his will was duly admitted to probate on December 19, 1921, and Hugh H. Pixlee and Eva M. Pixlee were appointed executor and executrix, and qualified as such. Hugh H. Pixlee was also appointed trustee of the trust created in paragraph 5 of the will and qualified as such. Eva M. Pixlee, the widow of the testator, elected to take under the law and thereby became the owner in fee of an undivided one-half interest in the Kansas land.

Eva M. Pixlee died intestate December 3, 1922, and her daughter Maude Pixlee inherited from her mother the undivided one-half interest to the Kansas land. On October 22, 1923, Maude Pixlee married Thomas J. Shoemaker. On August 3, 1934, Maude Pixlee Shoemaker and Thomas J. Shoemaker, her husband, executed a warranty deed to Joseph B. Nicholas conveying to him all of the Kansas land and later the same day Joseph B. Nicholas and his wife, by warranty deed, conveyed the same land to Maude Pixlee Shoemaker, which deeds were duly recorded. Thus, cutting off an estate tail, if one was created by the will.

Maude Pixlee Shoemaker died intestate, a resident of Clinton County, Missouri, on December 23, 1950, leaving Thomas J. Shoemaker, her surviving spouse, as her sole and only heir at law. On December 27, 1950, the probate court of Clinton County, Missouri, duly appointed Gerald Cross administrator of the estate of Maude Pixlee Shoemaker, deceased, and on February 21, 1951, Edward E. Pedroja was duly appointed as ancillary administrator of the estate of Maude Pixlee Shoemaker by the probate court of Greenwood County, Kansas, and is now acting as such.

On November 19, 1951, the heirs at law of William T. Pixlee (other than Hugh H. Pixlee) filed their claim in the probate court of Greenwood County in the matter of the estate of Maude Pixlee Shoemaker and asserted that they were the owners of an undivided interest in the Kansas property. The administrator and Thomas

J. Shoemaker, who intervened in the proceedings, filed a defense to the claim, contending the will of William T. Pixlee vested in Maude Pixlee Shoemaker an estate tail in the undivided one-half interest of the Kansas land, which did not pass to her mother when she elected to take under the law; that the entailment was cut off by a general warranty deed conveying the Kansas land executed by Maude Pixlee Shoemaker and her husband to Joseph B. Nicholas on August 3, 1934; that thereafter Joseph B. Nicholas and his wife executed and delivered to Maude Pixlee Shoemaker their warranty deed reconveying the Kansas land to her, which deeds were duly recorded and by reason thereof Maude Pixlee Shoemaker was the owner in fee of all the Kansas land at the time of her death; and, further contending that the claimants were estopped by record and by judgment in certain actions which were pleaded. These will be noted later. A reply of the claimants was filed. The controversy was duly certified to the district court for trial.

In the trial court pertinent facts were stipulated and much documentary evidence was introduced embodying the former litigation upon which the administrator and intervener relied as *res judicata* or estoppel. The Cities Service Oil Company and the Barbara Oil Company each intervened and filed defenses to the effect that relying upon previous litigation they took certain oil and gas leases on part of the Kansas land upon which oil was produced, and royalties paid. The court considered all this evidence and the arguments of counsel and made findings of fact and conclusions of law, which need not be noted now except it denied the claim of the administrator and intervener to the effect that Maude Pixlee Shoemaker had an estate tail in the land and held that she had only a life estate, and also denied the contention that the claimants were barred because of the previous litigation. Judgment was rendered accordingly. The administrator and intervener have appealed.

We pass now to the principal question in this case, namely, whether William T. Pixlee, by his will gave his daughter, Maude Pixlee, an estate tail in the Kansas land, as a matter of law. This depends upon the intent of the testator as shown by other portions of the will bearing upon the question, and involves the doctrine of definite or indefinite failure of issue.

Paragraph 4 of the will, in part, reads:

"I give and devise all my real estate, (subject to matters not here important) to my only living child, Maude Pixlee, and to her bodily heirs."

Had the will stopped there, some early English cases, and some of ours, particularly *Allen v. Pedder,* 119 Kan. 773, 241 Pac. 696, would support the rule that the will gave to Maude Pixlee an estate tail in the Kansas land—but, it did not stop there. It further reads:

". . . If she should die without leaving bodily heirs, then I give and devise the remainder which would go to said bodily heirs, if such existed, to my brothers and sisters, in fee simple, in equal shares, the descendents of such of my brothers and sisters as may be dead at the date of the death of my said daughter, to take per stirpes the share such brother or sister would have taken, if living. . . ."

The provision for final disposition of the trust fund created by paragraph 5 of the will provided that the trust fund be given to Hugh H. Pixlee, trustee,

". . . , he to loan and invest the same, and to keep the principal intact, and to increase the same by increment of interest earned, if he can. . . ."

and to pay the same to his wife during her lifetime, and after her death, to pay such income to his daughter during her lifetime,

". . . , and at her death, distribute the same absolutely, in equal shares, per stirpes, to the bodily heirs of my said daughter, Maude Pixlee. If she has no bodily heirs, then he shall distribute the same to my brothers and sisters absolutely, in equal shares, the descendants of such of my brothers and sisters as may be dead at the date of the death of my said daughter, to take, per stirpes, the share of such brother or sister would have taken, if living. . . ."

At the time the will was written Maude Pixlee was about 41 years of age and had never married. It is clear the testator took into account the likelihood that she would not marry, or if she did, she would not have "bodily heirs," and provided for the disposition of the property under those conditions. One characteristic of an estate tail, when created, is that it continues through the bodily heirs for succeeding generations. Obviously, the testator did not wish that to be done for he himself provided what should occur in the event his daughter did not marry and have bodily heirs.

The doctrine of definite or indefinite failure of issue came into our law almost as early as the doctrine of estates tail, which first appeared in our law in the case of *Ewing v. Nesbitt,* 88 Kan. 708, 129 Pac. 1131, decided February 1, 1913, and *Klingman v. Gilbert,* 90 Kan. 545, 135 Pac. 682, decided October 11, 1913. The latter case

dealt with the provisions in the will for the daughter of the testator. With respect to the daughter, paragraph 3 of the syllabus reads:

"A will providing that property devised to the testator's daughter should, 'if said daughter shall be survived by issue,' descend to such issue, 'but failing such issue,' should go to her brothers, means that if at the time of her death the daughter had living issue such issue should take an absolute title and that otherwise the title should pass to the brothers. If the rule of the common law as in force in this state, that the phrase 'failure of issue,' when used without explanation, is deemed to refer to an indefinite failure, the language quoted is sufficient to show a contrary intention."

In the opinion, p. 554, it is said:

". . . The words 'failing such issue' if used alone might under the arbitrary rule of the common law be held to refer to an indefinite failure of issue. But the testator's purpose is made clear by the context. The phrase 'if said daughter shall be survived by issue,' can only mean if she shall have living issue at the time of her death. The subsequent words 'failing *such* issue' as clearly refer to a failure of living issue at the time of the mother's death. Moreover, the fact that upon her death without issue the property was to go to her brothers sufficiently indicates that the immediate and not the future failure of issue was in the mind of the testator."

In October, 1937, Justice R. A. Burch, who wrote the opinion of the court in *Ewing v. Nesbitt*, supra, then Dean of the Washburn Law School, wrote a letter to the Chairman of the Judicial Council, which was published in the Judicial Council Bulletin, and also in Bartlett's Kansas Probate Law and Practice (Rev. Ed.), Vol. 1, p. 587, upon the importance of the subject in property law known as that of definite failure of issue and indefinite failure of issue, in which he said:

"In the opinion formulated by Mr. Justice Mason, in the case of *Klingman v. Gilbert*, 90 Kan. 545, 135 P. 682, (1913), the state of the law in this country relating to definite and indefinite failure of issue was exhibited. The rule that slight circumstance will serve to indicate definite, rather than indefinite failure of issue, was applied at the end of the first paragraph on page 554. But beyond that, a careful reading of the opinion, pp. 553 and 554, will disclose the court distinctly refrained from acknowledging that the indefinite failure of issue doctrine was ever a part of the common law of this state. No specific acknowledgment to that effect has since been made by the court in any case in which such an acknowledgment was necessary to the decision. The extent to which the common law remains in force in this state is fixed by statute, G. S. 1935, 77-109, and the way is still open for the court to reject the anachronistic indefinite failure-of-issue doctrine."

Since the opinion in *Klingman v. Gilbert*, supra, this court, in a number of cases, has considered the will, as a whole, to determine

the intent of the testator as to whether the provision provided for definite or indefinite failure of issue. We do no more than cite the cases. *Berthoud v. McCune,* 130 Kan. 634, 287 Pac. 904; *Burnworth v. Fellerman,* 131 Kan. 186, 289 Pac. 433; *Coleman v. Shoemaker,* 147 Kan. 689, 78 P. 2d 905; *Delp v. George,* 158 Kan. 774, 150 P. 2d 334; *Morehead v. Goellert,* 160 Kan. 598, 164 P. 2d 110; *Wood River Oil & Refining Co. v. Madden,* 169 Kan. 633, 220 P. 2d 154; and, *Smith v. Federal Land Bank of Wichita,* 173 Kan. 90, 243 P. 2d 1027. This list may not be complete.

The opinions in these cases cite general authorities supporting the holdings of the court. To these may be added the statement from 19 Am. Jur., Estates, p. 515, where it is said:

". . . whenever it appears in the instrument creating the estate that it was intended that the issue of the first taker should take by inheritance in a direct line, and in a regular order and course of descent, so long as his posterity should endure, and an estate in fee or in tail is given in remainder, upon an indefinite failure of issue, then the estate first created will be construed to be an estate tail. If, on the other hand, the limitation over is not postponed until an indefinite failure of issue, but is to take effect on failure of children only or on failure of issue within a given time, upon what is known as a 'definite failure of issue,' it is well settled that the estate will not belong to the class known as 'estates tail.'"

Examining the will in the light of the above authorities, we think it clear. that the will did not create an estate tail in Maude Pixlee in the Kansas land.

We turn now to the second question, whether the claimants are estopped from contending that the will did not create an estate tail in Maude Pixlee Shoemaker in the Kansas land.

Sometime, the exact date is not shown, after the will of William T. Pixlee was admitted to probate and Hugh H. Pixlee was appointed trustee under paragraph 5 thereof, he opened a proceedings in the probate court of Clay County, Missouri, entitled In the Matter of the Trust Estate of Maude Pixlee Shoemaker, in which he deposited, in the trust account, the money authorized by the will (paragraph 5), and also the moneys later derived from the operation of oil wells on the Kansas land.

On May 21, 1932, Maude Pixlee Shoemaker commenced an action in the circuit court of Clay County, Missouri, against Hugh H. Pixlee, trustee, and individually, which case was later removed to the circuit court of Lafayette County, Missouri, to construe the will and to decree that all rights of the trustee to control or manage

or to receive royalties or income from the undivided one-half of the Kansas land ceased upon the death of Eva M. Pixlee, and from that time on the full right of possession and enjoyment of the land, including the right to oil royalties and income, vested in the plaintiff; and, asked the court to decree that an accounting be had on all of the income of the trust fund for the purpose of ascertaining the correct and proper amount to which plaintiff was entitled.

The defendant's answer contained a general denial, and alleged that the parties in interest construed the will of William T. Pixlee as creating a trust fund to be administered by the defendant as trustee, and construed the will as requiring that all the royalties of one-half of the oil land in Kansas, owned by the testator at the time of his death, should be placed in and become part of the trust fund established by the will of William T. Pixlee, and that all interested parties acquiesced in and consented thereto, and no objection was made by any party in interest until the filing of this suit. He alleged that the will had never been construed and asked the court to construe it, particularly clauses 3, 4 and 5. Final judgment was not rendered in the case in the Lafayette County, Missouri, court until after the judgment was rendered in an action brought by plaintiff in the district court of Greenwood County, Kansas, soon to be mentioned.

On July 29, 1925, Hugh H. Pixlee induced Maude Pixlee Shoemaker and her husband to convey to him by general warranty deed all of the Kansas land, and on March 29, 1926, Hugh H. Pixlee and his wife reconveyed to Maude Pixlee Shoemaker by quitclaim deed an undivided one-half interest in the Kansas land. Maude Pixlee Shoemaker brought an action in the district court of Greenwood County, Kansas, against Hugh H. Pixlee and his wife, Norma L. Pixlee, to set aside her deed of July 29, 1925, alleging that she had been induced to execute the deed by fraudulent misrepresentations by Hugh H. Pixlee and others associated with him, and fraudulent concealment of facts of which he was under obligation to advise her. We need not detail these alleged fraudulent acts. Defendant filed an answer containing a general denial, and pleaded facts alleged to constitute estoppel, and also pleaded the statute of limitations, and for affirmative relief alleged that Hugh H. Pixlee was the owner of an undivided one-half interest in the Kansas real estate; that he had set up a certain trust, a copy of which was attached to the answer. Plaintiff filed an ap-

propriate reply to this answer on December 15, 1933. On June 8, 1934, plaintiff filed an amendment and supplement to her petition in which she reaffirmed the statements made in her amended petition. She alleged that defendant had unlawfully assumed to manage the Kansas real property; that he had collected rents, bonuses and royalties from leases executed by her father, and leases subsequently executed by defendant, and had either appropriated bonuses, rents and royalties to his own use or had converted them into the trust provided for in the will of her father; and, that all said rents, profits, bonuses and royalties belonged to plaintiff and that she was entitled to an accounting therefor. The prayer was that the court retain jurisdiction of the action and the parties, require defendant to account to plaintiff for all rents, profits and royalties, and for judgment of the sum found due to the plaintiff.

The defendant, Hugh H. Pixlee, appearing specially, filed a motion to strike from the files the amendment and supplemental petition on the ground: that the court had no jurisdiction of the person of Hugh H. Pixlee, and that it had no jurisdiction over the subject matter of the accounting between the parties. He alleged there was pending in the circuit court of Lafayette County, Missouri, an action brought by plaintiff against Hugh H. Pixlee, Trustee, and Hugh H. Pixlee, Individual, in which she sought an accounting; that the issues had been joined in that action and it was ready for trial; and, that the accounting asked for in that case was the same as asked for by plaintiff in her amendment and supplemental petition. That motion to strike was denied.

The district court of Greenwood County, Kansas, has two divisions, presided over at that time by Judge Ayers in the First Division, and Judge Benson in the Second Division; they sat together for the hearing of this case. The court first considered the question of setting aside the deed of July 29, 1925, because of the alleged fraud of grantee. It found the fraud to exist and set aside the deed and the purported trust agreement, which Hugh H. Pixlee had drawn but never filed, and apparently had never advised plaintiff of it. The court then considered the accounting feature, and to do so it considered plaintiff's title to the Kansas land, and held plaintiff became the owner, under the terms of the will of her father, William T. Pixlee, of a fee tail estate in and to the undivided one-half interest in the 4,400 acres of land involved in the action (describing it). The court further held that Hugh H. Pixlee and his wife executed oil and

gas leases on this undivided one-half interest in the Kansas land and collected on account thereof the total sum of $173,703.83. Plaintiff, in open court, announced she elected to ratify and confirm the acts of Hugh H. Pixlee in making oil and gas leases, collecting rentals, bonuses and royalties derived from the undivided one-half interest in said land. The court further found that defendant, Hugh H. Pixlee, should be allowed credit for commissions, attorneys' fees and expenses incurred by him in the sum of $43,395.35, to which finding the plaintiff consented; and, that the remainder of the funds, amounting to $139,308.48, should be paid to plaintiff. Judgment was rendered in harmony with those findings. No appeal was taken from the judgment of the court.

On October 9, 1934, the circuit court of Lafayette County, Missouri, in the case of Maude Shoemaker v. Hugh H. Pixlee, Trustee, and Hugh H. Pixlee, Defendants, rendered its decree therein in which it found plaintiff was the owner of an undivided one-half interest in the Kansas land as the sole heir of her mother, Eva M. Pixlee, deceased. (A fact which was never controverted.) And further held that under the will of William T. Pixlee, deceased, and the law of the state of Missouri, and the state of Kansas, plaintiff was tenant in tail as to the other undivided one-half interest in the Kansas land, and as such owner was entitled to receive all the bonuses, royalties, earnings, proceeds and income therefrom; that Hugh H. Pixlee put said bonuses, royalties, earnings, proceeds and income into the trust fund created by said will and undertook to make the same a part thereof; that Hugh H. Pixlee, as trustee, had received, as bonuses, royalties, earnings, proceeds and income from the oil and gas leases of and on the undivided one-half interest in the Kansas land in the sum of $173,703.83; that he had expended and become liable for the sum of $43,395.35 on account of counsel fees and expenses of administering the trust, including the litigation in Missouri and Kansas in defense of said trust and the funds so placed therein by him, which said sum should be deducted from the sum of $173,703.83, leaving a balance of $130,308.48. The decree continued by ordering judgment for plaintiff for that balance, and by disposing of some small items not here in controversy. No one appealed from this judgment.

What is there about these former decisions unappealed from, which estopped the present claimants from claiming their interest in the undivided one-half interest in the Kansas land? They were

not parties to these previous actions. They had no right to claim under either paragraph 4 or 5 of the will until after the death of Maude Pixlee Shoemaker, which did not occur until December 23, 1950. More than 16 years after these prior cases were decided. In fact, who would constitute the members of the class of claimants now pressing their claim could not be determined until after December 23, 1950. It is a general rule that in an action to construe a will, all persons who will be affected by the decision should be made parties to the action. See, *Ayers v. Graff*, 153 Kan. 209, 109 P. 2d 202, and authorities cited pp. 212 and 213. This is the first case in which that has been done.

In this case the trial court made exhaustive findings, which we have not attempted to review, and made conclusions of law to the effect that the claimants in this action were not estopped by any prior litigation referred to; and,

"Maude Pixlee Shoemaker acquired but a life estate to the one-half interest in said real estate, and as such she was entitled to the possession thereof and to collect all the income therefrom during her lifetime and upon her death her interest therein ceased.

"Claimants, with the exception of Hugh H. Pixlee, as the sole surviving sister and descendants of the deceased brothers and sisters of William T. Pixlee, deceased, are entitled as a matter of law to the undivided 8/9ths of the 1/2 interest in and to the above described real estate under the Will of William T. Pixlee and the proceeds thereof subsequent to the death of Maude Pixlee Shoemaker."

We concur in those conclusions of law. The 8/9ths interest mentioned refers to the interest of the claimants collectively. The individual fractional interest of the respective claimants is elsewhere shown in the record.

We find no error in the record. The judgment of the trial court is affirmed.