Charles Burton STEELE, Executor of the Estate of Ethel E. Steele, Deceased, et al., Plaintiffs-Appellants,

v.

Gerald CROSS, Executor of the Estate of Thomas J. Shoemaker, Deceased, et al., Defendants-Respondents.

No. 49215.

Supreme Court of Missouri,

Division No. 1.

March 11, 1963.

Motion for Rehearing or to Transfer to Court En Banc Denied April 8, 1963.

Hilary A. Bush, Johnson, Lucas, Bush & Vardeman, Kansas City, Conn Withers, Alan F. Wherritt, Liberty, John B. Ewing, Jr., Kansas City, for appellants.

Pross Cross, Lathrop, Clay C. Rogers, Charles L. Carr, Rogers, Field & Gentry, Kansas City, for respondents.

PER CURIAM.

The plaintiffs in this case are the brothers and sisters, or their successors in interest (except Hugh H. Pixlee), of William T. Pixlee who died testate, a resident of Clay County, Missouri, on November 28, 1921. At the time of his death he owned 4,400 acres of land in Lyon and Greenwood Counties, Kansas, most of which was oil producing land. In a manner hereinafter detailed decedent's only child, Maude Pixlee Shoemaker, shortly after her father's death, became a life tenant in an undivided one half of said land. From that time until her death on December 23, 1950, she, or her guardian, collected the royalties for oil produced from said undivided interest in that land under various leases. By 1934 the amount so received totaled $130,308.48. The total amount received thereafter has not been ascertained. Briefly stated, it is the contention of plaintiffs in this case that said life tenant was entitled only to the earnings or interest income from said royalties during her lifetime and at her death they, as remaindermen, were entitled to receive the corpus thereof.

Defendants herein are Gerald Cross in his capacity as administrator of the estate of Maude Pixlee Shoemaker, deceased; Gerald Cross in his capacity as executor of the estate of Thomas J. Shoemaker, deceased (Thomas J. Shoemaker was the husband and only heir of Maude Pixlee Shoemaker); and Gerald Cross in his capacity as trustee under the last will and testament of Thomas J. Shoemaker, deceased. (It will be noted that there is only one defendant, but since he is sued in three different representative capacities, we will refer to him by the plural designation "defendants".) After filing an answer which set up various defenses the defendants, on June 20, 1961, filed a motion for summary judgment. Briefly summarized, it alleged as grounds for judgment (1) that this suit is barred under the nonclaim provisions of the probate code; (2) that the issues here tendered have been finally adjudicated in two prior suits hereinafter more fully described; and (3) that these plaintiffs have split their cause of action by a failure to tender this claim in one or both of the two prior suits mentioned in ground (2). The

motion was supported by certain affidavits and exhibits which establish the facts upon which the defendants' contentions of law are founded. The trial court sustained the motion for summary judgment and entered judgment for defendants and against plaintiffs. Plaintiffs have duly appealed therefrom.

By his will William T. Pixlee left all of his real estate to his wife Eva for life, and then to his only child Maude and her bodily heirs. The will further provided that if Maude died without bodily heirs the real estate would descend to testator's brothers and sisters and their descendants per stirpes. Hugh H. Pixlee was made executor of the will and was appointed trustee of a trust created therein. In regard to that trust the will provided that all personal property not otherwise bequeathed would become a part thereof, and it was specified that the income from said trust was to be used mainly for the care of testator's wife during her lifetime, and after her death such should be used for the care and comfort of Maude, and, at Maude's death, without bodily heirs, the corpus should be distributed absolutely to testator's brothers and sisters or their descendants per stirpes.

In regard to the real estate the will provided that in managing the same testator's wife and Hugh "may lease for oil in the usual manner, if they think best," the proceeds to go to the trust fund hereinabove described.

The widow renounced the will and elected to take outright an undivided one-half interest in the estate. She thus became the owner in fee of an undivided one-half interest in the Kansas real estate, and upon her death on December 3, 1922, that undivided one-half interest descended to her only child Maude. The income from that one-half interest is not here involved, but that interest is referred to from time to time in connection with the issues before us.

The legal effect of the renunciation of the will by the widow was to accelerate the vesting of the life estate of Maude in the other one-half interest in the Kansas land. In that connection it may be here stated that a serious question thereafter arose as to whether, under the terms of the will, Maude received an estate tail or a life estate in said undivided interest. Apparently, if it was an estate tail, under Kansas law such could be transformed into a fee simple estate by a conveyance from the devisee to a third party and a subsequent reconveyance to the devisee. In the year 1934, Maude and her husband, by conveyance to one Nicholas, and a reconveyance on the same day to Maude, attempted to so transform her interest into a fee simple estate. However, in litigation subsequent to Maude's death, the Kansas Supreme Court held that Maude's interest was a life estate. Steele v. Pedroja, 178 Kan. 441, 289 P.2d 738.

In July 1925, Maude conveyed the Kansas land to Hugh H. Pixlee, and Hugh reconveyed to her the half interest which she inherited from her mother, and retained the half interest here involved in trust under an agreement with Maude. He apparently collected the oil royalties and placed them in the trust estate which had been created by the will of William T. Pixlee. Thereafter, Maude filed a suit in Kansas against Hugh Pixlee and his wife in which she sought to set aside the deed she had made to Hugh, and to recover the oil royalties he had collected therefrom. The court granted the relief plaintiff sought, set aside the deed, and ordered that Hugh, after deducting certain expenses, deliver to Maude certain specifically described government bonds in the face amount of $130,000.00 from the trust estate heretofore mentioned which had been bought with royalties received, and cash in the sum of $308.48—all of which represented in the aggregate the net amount due to Maude for royalties theretofore collected from the half interest here involved. Maude had also filed a suit in Clay County, which went on change of venue to Lafayette County, in which she sought similar relief insofar as the oil in-

come was concerned as that sought in the Kansas case, which suit was terminated insofar as it related to the oil income by a judgment similar to the one entered in the Kansas court.

On October 17, 1925, Maude was adjudged to be a person of unsound mind. On May 18, 1932, she was found to be of sound mind and her guardian was discharged. She was, however, again adjudged to be of unsound mind on September 8, 1943, by the Probate Court of Clinton County and Gerald Cross was appointed her guardian and continued in that capacity until her death on December 23, 1950. On December 27, 1950, Gerald Cross was appointed domiciliary administrator of Maude's estate and duly qualified in that capacity. On February 21, 1951, Edward E. Pedroja was appointed ancillary administrator of her estate by the Probate Court of Greenwood County, Kansas. In 1934, as heretofore stated, Maude received from Hugh Pixlee the oil royalties paid to him on the property here involved up to that time. Thereafter, Maude, or her guardian, collected the royalties for the undivided interest now owned by plaintiffs and commingled said income with her other assets and obviously treated said income as her property rather than money from which she might be entitled to the income only.

Not long after Maude's death the plaintiffs in this case, or their predecessors, filed a claim in the Probate Court of Greenwood County, Kansas, seeking to establish their interest in the Kansas land. Hugh's one-ninth interest in the land had theretofore, in some manner, been transferred or conveyed to Maude so that plaintiffs in that case sought to establish that they were the owners in fee of an eight-ninths interest in an undivided half interest in said land, and sought an accounting from the ancillary administrator of all income derived from their interest in the land after the death of Maude. This case was transferred to the district court and a trial thereafter resulted in a judgment for plaintiffs. That judg-

ment was affirmed in the Kansas Supreme Court. See Steele v. Pedroja, supra. Certain orders made in that case, and certain recitals in the judgment, afford a basis for defendants' claim that an adjudication was made in that case establishing Maude's right to the royalty income from that land until the time of her death.

Very shortly after the judgment became final in Steele v. Pedroja, which established plaintiffs' interest in the Kansas real estate, a partition suit was filed in Kansas by Thomas J. Shoemaker, Maude's sole heir at law, and Mr. Pedroja as ancillary administrator of Maude's estate, against the owners (these plaintiffs or their predecessors) of the eight-ninths of an undivided one-half interest in said real estate. In that case plaintiffs also asked that there be an accounting between the parties for rents and income received from said real estate after Maude's death. Defendants therein, in their cross-petition, also sought partition and an accounting for royalties received after Maude's death, and, in addition, prayed "for an accounting for all oil runs received by the plaintiffs or their predecessors in title subsequent to the death of William T. Pixlee on the 28th day of November 1921." Plaintiffs filed a motion to strike the quoted portion of the cross-petition upon the grounds that any claim for any income prior to Maude's death had been barred by the statute of nonclaim and the statutes of limitation of Kansas, and for the further reason that defendants had waived any such claim in the case of Steele v. Pedroja, and in that case had asserted their claim for the income received after Maude's death and thereby had split any cause of action they had and were precluded from now asserting any additional claim for income from that land. Said motion was sustained "through said attorneys [for defendants therein—present plaintiffs] consenting thereto." That proceeding and perhaps other orders in that case afford the basis for defendants herein to contend that the judgment in that partition suit is res judicata of plaintiffs' claim herein.

On April 2, 1957, Thomas J. Shoemaker died, and thereafter Gerald Cross, as domiciliary executor of his estate, was substituted in the Kansas partition suit for said decedent. Subsequently, upon an agreed accounting, said Gerald Cross as administrator of Maude's estate, and Mr. Pedroja as ancillary administrator of Maude's estate, were ordered to pay the aggregate sum of $56,161.39 to defendants therein (these plaintiffs) for pasture rental and oil royalties collected by them from the property in question after the date of Maude's death.

On December 22, 1955, the original petition in the case at bar was filed. It is of interest that this suit was filed just five years, lacking one day, after Maude's death. It also should be noted that in the original petition plaintiffs sought recovery only of the value of the bonds and money which Hugh Pixlee delivered to Maude in 1934. A comparison of the bonds delivered to Maude at that time, and the assets inventoried in Maude's estate, shows that none of the bonds she received in 1934 were in her estate at the time of her death. The only accounting sought in the original petition was for a determination of the market value at that time of the bonds in the face amount of $130,000 which were turned over to Maude in 1934.

This suit was originally filed in the Circuit Court of Clinton County, Missouri, but thereafter the venue was changed by agreement to the Circuit Court of Jackson County, Missouri. Plaintiffs, with leave, filed a first amended petition on May 1, 1961. In that petition they sought an accounting as to all royalties from all oil leases from the time Maude became a life tenant in the one-half interest in said Kansas land until the date of her death in order to determine the capital sum to which the remaindermen were entitled upon Maude's death.

Upon this appeal plaintiffs contend that the trial court erred in sustaining the motion for summary judgment. The parties have briefed their respective contentions relating to each of the three grounds upon which the motion was based. We will first consider the contention that plaintiffs' claim is barred under the nonclaim statute.

■ We, of course, are not called upon to decide the ultimate question presented by plaintiffs' petition upon the merits. As a matter of background, it is of interest to note that plaintiffs rely on the rule that a life tenant is not ordinarily permitted to exploit the mineral resources of real estate in his possession. The rule and its exceptions are stated as follows: "[A] life tenant has no right to exploit the gas and oil resources of the property for his own benefit, or to authorize, by lease or otherwise, another to do so, where such exploitation had not been begun or authorized before the commencement of the life estate and no such right has been conferred upon him by the will or other instrument by which the life estate was created, or by agreement or consent of the remaindermen entitled to the eventual estate. As the rule is sometimes expressed, the life tenant has no right to open new wells where none had been opened or authorized before the commencement of the life estate." Anno. 43 A.L.R. 811. It would appear that neither Maude nor her guardian had the authority to enter into any oil leases but apparently plaintiffs in Steele v. Pedroja, supra, elected not to contest the validity of any such leases. Upon this general subject it has been said that "where the life tenant and remaindermen join in an oil and gas lease they may agree as to division of rents and royalties, and in the absence of agreement, the life tenant is entitled either to have the royalties invested and to receive income therefrom, or to receive an apportionment of the royalties dependent on the value of his expectancy." Burden v. Gypsy Oil Co., 141 Kan. 147, 40 P.2d 463, 468.

■ Maude died on December 23, 1950. An administrator of her estate was appointed December 27, 1950, and the first publication of letters was made on January 11, 1951. This suit was filed on December 22, 1955. We have concluded that the claim

of plaintiffs herein is barred by the probate nonclaim statute because this suit was not commenced within one year from the date of the first publication of letters in Maude's estate. Since the events with which we are concerned occurred prior to January 1, 1956, the effective date of the new probate code, the questions presented will be governed by the prior applicable statutes. See §§ 464.010, 464.020, and 464.070 (unless otherwise indicated all statutory references are to RSMo 1949, V.A.M.S.).

Although we doubt that it would in any manner change our decision we have, in determining the question presented, disregarded the amended petition filed May 1, 1961. This for the reason that if, as we have decided, the claim in the original petition was barred by the nonclaim statute, the amendment seeking additional relief could not relate back to the filing of the original petition and save the claim from the bar of that statute. Arpe v. Mesker Bros. Iron Co., 323 Mo. 640, 19 S.W.2d 668. If, on the other hand, the new claim was not one to which the nonclaim statute would apply, it would nevertheless be barred by the general statute of limitation, § 516.120, RSMo 1959, V.A.M.S., which defendants pleaded. Mitchell v. The Health Culture Co., 349 Mo. 475, 162 S.W.2d 233.

Section 464.010 provides, in part, as follows: "All demands against the estate of any deceased person shall be divided into the following classes: * * * (5) All demands, without regard to quality, which shall be legally exhibited against the estate within six months after the date of the granting of the first letters on the estate; (6) All demands thus exhibited after the end of six months and within one year after the date of the granting of the first letters on the estate." Section 464.020 reads as follows: "All demands not thus exhibited in one year shall be forever barred, saving to infants and persons of unsound mind, or imprisoned, one year after the removal of their disability, and said one year shall be-

gin to run from the date of the granting of the first letters on the estate where notice shall be published, the first insertion within ten days after letters are granted; and in all other cases said one year shall begin to run from the date of the first insertion of the publication of the said notice." And § 464.070 states that "All actions commenced against such executor or administrator, after death of the deceased, shall be considered demands legally exhibited against such estate from the time of serving the original process on such executor or administrator." It is perhaps apropos to state at this point that, insofar as applicable to the precise question before us, we do not see any substantial difference between the statutes herein quoted and comparable sections of the new probate code (§§ 473.397 (6), (7), 473.360, and 473.367, RSMo 1959, V.A.M.S.), and therefore we are warranted in relying, to the extent hereinafter indicated, upon the case of North v. Hawkinson, Mo.Sup., 324 S.W.2d 733, which involved sections of the new code.

Many of the cases of this court and of the courts of appeals have not been in harmony nor free from conflict in determining questions relating to the necessity of compliance with the nonclaim statute in actions of an equitable nature involving various factual situations. Over a period of time it was held in a number of cases that the probate court had no jurisdiction of equitable claims and therefore such claims were not barred by failure to comply with the nonclaim statute. See Orr v. St. Louis Union Trust Co., 291 Mo. 383, 236 S.W. 642, Clay v. Walker, Mo.App., 6 S.W.2d 961, Bond v. Unsell, Mo.App., 72 S.W.2d 871, and Cunningham v. Kinnerk, 230 Mo. App. 749, 74 S.W.2d 1107. It now appears to be established, however, that if a claim otherwise comes within the bar of the nonclaim statute it will be barred thereby even though it is a claim which the probate court did not have jurisdiction to adjudicate. Helliker v. Bram, Mo.Sup., 277 S.W.2d 556; North v. Hawkinson, supra.

We are in full accord with the rulings in the Helliker and North cases. The purpose of the statute of nonclaim is to aid in the prompt settlement of estates of decedents. Within a reasonable time debts should be paid and the remainder of the assets distributed among the beneficiaries of the estate. There has long been a statute (§ 464.070) in this state which has provided that claims or demands could be legally exhibited by filing a suit against the executor or administrator of the estate. No sound reason appears as to why the nonclaim statute should not apply to all claims against an estate regardless of the forum in which they may or must be established. There is no relationship between the requirement as to the time in which a claim must be exhibited and the court which has jurisdiction to determine it. If a claim is of the type that only the circuit court has jurisdiction thereof it is in no manner unjust to require the claimant to file suit within the period provided in the nonclaim statute for the filing of claims in the probate court. It is only by so construing the statutes that the well-established plan for the prompt administration of estates may be made fully effective.

In support of their contention that their claim for relief in this suit is not barred by failure to file the suit within the period provided in § 464.020, plaintiffs rely mainly upon the case of Orr v. St. Louis Union Trust Co., supra. In that case, involving an express trust, plaintiff had delivered a large sum of money to her husband to invest for her. After her husband died and his estate had been administered she filed suit to recover her money from the trustee of a trust estate her husband had created in his will. This court held that she was entitled to an equitable lien on a certain building in which some of her funds were invested, and that she could recover the remainder which had been intermingled with her husband's general property from his estate in the hands of his trustee. However, in holding that plaintiff's claim had not been barred by the nonclaim statute the court relied entirely upon the rule that the claim was of an equitable nature and hence was not cognizable before the probate court. We think that portion of the Orr opinion (discussed in the preceding sentence) has been overruled, by necessary implication, by the Helliker case, supra, which held that a tort claim, although not within the jurisdiction of the probate court, was barred by failure to sue within the nonclaim period, and by the North case, supra, which held that an equitable suit for a partnership accounting was barred because it was not filed within the nine-month period provided in the present nonclaim statute. In North, we said, "an adequate means for the determination of the merits of plaintiff's right of action was available by a suit in the circuit court and we need not determine whether the probate court had concurrent jurisdiction to hear and determine plaintiff's cause of action if it had been filed as a claim in that court. * * * It is wholly fallacious to hold (as some decisions appear to have done) that the limitation provisions of the probate code do not apply unless the probate court has jurisdiction to adjudicate the merits of the claim in question." 324 S.W.2d l. c. 745. The Orr, Helliker, and North cases were all decided by Division 2 of this court. It also follows from the foregoing that the court of appeals cases heretofore cited (Clay, Bond, and Cunningham) which followed the Orr case on the point discussed herein, should no longer be followed in that respect

(In connection with our discussion of the questions here involved, it should be made clear that we are not called upon, by the issues here presented, to consider the soundness of the cases holding that the nonclaim statute would not bar an action to establish a trust where the funds were traced into specific real or personal property.)

Plaintiffs in the case before us seek to establish a constructive trust. Such a trust is imposed as a remedy to prevent

unjust enrichment. A proper way to enforce a constructive trust is by an action for money had and received. Campbell v. Webb, 363 Mo. 1192, 258 S.W.2d 595 [6]. "Although an action at law, an action for money had and received is equitable in its nature and is governed by equitable principles." 58 C.J.S. Money Received § 1, p. 906. In the case at bar plaintiffs do not allege that the money Maude collected can be traced into any specific real or personal property. It is clear that if plaintiffs simply seek a money judgment their claim is barred by failure to sue within the nonclaim period. Regardless of whether the claim alleged in the petition is denominated as legal or equitable we think it is, in all practical respects, a suit to recover a specific sum of money, i. e., $308.48, and an amount equal to the market value of the United States bonds in the face amount of $130,-000 that were delivered to Maude in 1934. The fact that an accounting is sought to determine the market value of the bonds in 1934, and that plaintiffs pray that the judgment be made a lien upon the assets in the various estates involved herein, does not change the fact that in reality plaintiffs are seeking a judgment to recover a sum of money which they contend should have been paid to them by Maude's administrator.

The situation in this case is somewhat similar to that in Campbell v. Webb, supra. In that case the second count of the petition sought to establish a constructive trust (and additional equitable relief) against assets in the estate of a deceased defendant, and also assets in the possession of his wife who was likewise a defendant. All of the parties entitled to recover were not made plaintiffs. After the period for filing claims against decedent's estate had elapsed the plaintiffs filed an amended petition seeking to convert the cause into a class action and to recover for all the parties beneficially interested in the claim. It was held that the claims of those who had not joined as original plaintiffs were barred by the nonclaim statute. See also the opinion on the first appeal, Campbell v. Webb, 356

Mo. 466, 202 S.W.2d 35. These cases strongly support the view we have taken in the case at bar.

As indicated, upon the authority of the cases heretofore cited, we rule that the claim alleged in plaintiffs' petition was barred by the failure of plaintiffs to file this suit within one year after the first publication of notice in Maude's estate (§ 464.020), and hence that the court did not err in entering a summary judgment for the defendants.

Since the first ground alleged in the motion for summary judgment is sufficient to warrant the judgment entered by the trial court, we need not consider the merits of the other two grounds included therein.

The judgment is affirmed.