**Carol D. ALARCON, Personal Representative of the Estate of Thelma Grove, Appellant,**

v.

**John W. DICKERSON, Respondent.**

**No. WD 37509.**

Missouri Court of Appeals, Western District.

Sept. 9, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 4, 1986.

Kelso Journey, Clinton, for appellant.

William J. Cason, Michael X. Edgett, Fred R. Bunch, James C. Johns, Clinton, for respondent.

Before CLARK, C.J., Presiding, and TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

The plaintiff appeals from a judgment for defendant entered upon defendant's motion to dismiss made at the close of plaintiff's evidence in a court-tried case. The ground upon which the motion to dismiss was granted by the court was that the plaintiff's petition had pleaded a cause of action in *conversion*, but the evidence did not make out a case on that theory. The petition is copied in the margin.[1]

---

1. The petition reads as follows:

1. Plaintiff states that during the years 1983 and 1984 she was the owner of several Certificates of Deposit and interest money earnings thereon with the First National Bank of Clinton, Henry County, Missouri, of the total value in excess of $50,000.00.

2. Plaintiff states that during and about the years 1983 and 1984, the Defendant, without Plaintiff's consent, unlawfully and feloniously in violation of Section 560.156 Revised Statutes of Missouri, converted, appropriated, embezzled and transferred all of Plaintiff's said Certificates of Deposit and money earnings to his own use and disposed of the same to the exclusion of Plaintiff's rights thereto, to Plaintiff's damage in the sum of $50,000.00.

WHEREFORE, Plaintiff demands judgment against Defendant for the sum of $50,000.00 and for costs of this action.

The evidence adduced by plaintiff was that Thelma Grove, a widow and the grandmother of Carol D. Alarcon and John W. Dickerson, the children of Thelma's deceased and only daughter, Carol Dickerson, entrusted to defendant John W. Dickerson a number of certificates of deposit and over a space of 11 years beginning in 1973 had contributed funds for additional certificates of deposit. At the beginning the funds were in the Farm and Home Savings Association, but were later transferred to the First National Bank of Clinton. The certificates were at first managed by Carol but the management was transferred to John when Carol after a brief time moved away from Missouri to New Mexico. The "management" included renewal of the certificates as they came due, collecting the interest checks and remitting the same to Thelma, and keeping the certificates. The petition alleged the certificates of deposit and the earnings thereon were of a "total value in excess of $50,000". The evidence showed the total face value of the nine certificates of deposit at the time of the institution of the suit to have been $58,208.67.

According to an oral agreement to which Thelma, Carol and John were parties, the certificates of deposit were to be issued in the joint names of Carol and John, who were to be co-equal owners at Thelma's death of any amount not needed by Thelma during her lifetime. During Thelma's lifetime the interest was to be paid to her. She would pay the income tax thereon, or would reimburse Carol or John if one of them paid the income tax.

This procedure was followed for a number of years. From time to time Thelma would accumulate money for additional certificates of deposit, which was paid to John for that purpose. At the time of Thelma's death on October 1, 1984, the principal of the certificates, as noted above, totaled $58,208.67. In June, 1984, and thereafter, Thelma did not receive the interest payments on the certificates of deposit as they came due. She attempted to get the possession of the certificates of deposit turned over to Carol for her management but was unsuccessful in doing so. In September, 1984, upon inquiry she learned that John on the preceding March 14 had pledged all the certificates of deposit to the First National Bank of Clinton as security for his personal loans. (During the pendency of the suit John defaulted in the payment of his indebtedness and the bank liquidated the collateral.) She learned also that some of the certificates of deposit included the name of John's son. (John had the possession of the certificates at all times, and Thelma apparently never saw them.) As a matter of fact, $30,000 of the certificates were entitled "John W. Dickerson POD Carol D. Alarcon or John W. Dickerson, Jr." One certificate in the amount of $14,208.67 was in the name of "John W. Dickerson POD John Dickerson, Jr." One for $3,000 was entitled "John W. Dickerson POD Carol Alarcon". One for $2,000 was in the name of "Carol Alarcon or John W. Dickerson". This particular certificate had been purchased by Carol with funds supplied by Thelma under date of May 18, 1984. Carol, a registered nurse by profession, had by this time moved back to Missouri to be near her ailing grandmother.

Thelma instituted this suit for damages in September, 1984, attaching John's interest in two tracts of real estate. After Thelma's death on October 1, 1984, Carol was appointed her personal representative and continued the suit.

The court's dismissal of plaintiff's action was based upon the premise that the petition had stated a claim for conversion, i.e., had stated that defendant had converted plaintiff's certificates of deposit, and that the plaintiff's proof was that she did not have legal title thereto but only equitable title, that plaintiff's equitable title to the certificates of deposit would not support a claim for conversion (citing *Osborn v. Chandeysson Electric Co.*, 248 S.W.2d 657 (Mo.1952), and *Sydney v. Coca-Cola Co.*, 569 S.W.2d 11 (Mo.App.1978)); and that therefore the petition had to be dismissed. In his written findings of fact and conclusion of law, the court stated:

In reflecting upon the law and the evidence, this Court truly believes that Thelma Grove gave her monies to Defendant to purchase C.D.'s in the names of Defendant and Carol D. Alarcon for her estate planning purposes and none other, and the Defendant placed those funds solely in his own name and pledged them for his debts. Thelma's actions constituted, in this Court's opinion, some sort of agency, resulting trust or contract between Defendant and Thelma Grove, all of which gave Thelma an *equitable* cause of action as opposed to a legal one ... While equity may be with plaintiff, defendant could not convert an equitable interest.

 We think the trial court erred in holding that the petition was distinctly and exclusively one for conversion of the certificates of deposit, and in holding that plaintiff's case therefore stands or falls upon the narrow question whether the proof offered in support thereof makes out a case of conversion of the certificates of deposit. The facts stated in the petition are broad enough to state an action for money had and received. It is after all the facts stated in the petition, along with the relief sought, which under our system of code pleading are to be looked at to determine plaintiff's theory, rather than the form of the petition. § 509.050, RSMo 1978; *Gerber v. Schutte Investment Co.*, 354 Mo. 1246, 194 S.W.2d 25 (1946).

 An action for money had and received is a very broad and flexible action, which seeks to reach monies which in equity and good conscience ought not to be retained by the defendant but ought to be paid to plaintiff. It is a legal action, but based upon equitable principles. The tendency of the courts is to widen rather than restrict its scope. *Johnson-Brinkham Company v. Central Bank of Kansas City*, 116 Mo. 558, 22 S.W. 813, 815 (1893); *Koontz v. Whitaker*, 111 S.W.2d 197, 200 (Mo.App.1937). *See generally* 58 C.J.S. Money Received § 1 (1948). It has been held in a number of cases both in Missouri and elsewhere that the action is appropri-

ate to recover money damages for breach or abuse of a trust, where the plaintiff does not seek to impress as trust upon and to recover specific property. *Steele v. Cross*, 366 S.W.2d 434, 441 (Mo.1963); *Campbell v. Webb*, 363 Mo. 1192, 258 S.W.2d 595, 602 (1953); *Johnson-Brinkham Co. v. Central Bank of Kansas City, supra*, 22 S.W. at 815; *Sidebottom v. Sidebottom*, 215 Mo. App. 513, 255 S.W. 353, 356 (1923).

"The complaint shows that the defendant received money in trust for the plaintiff and did not live up to the trust. In such a case the aggrieved party may sue either for breach of trust or for money had and received" (citing authorities). *Carl Byoir & Associates v. Tsune-Chi Yu*, 112 F.2d 885, 886 (2d Cir.1940). *See also* 3 A. Scott, The Law of Trusts, §§ 198–198.3 (3rd ed. 1967).

We may point out that defendant is put to no disadvantage in treating the petition as one for money had and received. He cannot claim that any ambiguity in the petition left him uninformed of the nature of the action lodged against him, and what he must defend against (which is an office of the petition, *see DeMott v. Great American Insurance Co. of New York*, 234 Mo. App. 31, 131 S.W.2d 64, 67 (1939)), for plaintiff's answers to interrogatories fully amplified the allegations of the petition to make it clear what plaintiff's claim consisted of. For the proposition that discovery may be looked to to "flesh out" the petition and to assist in isolating the issues, see *Gerber v. Schutte Investment Company*, 354 Mo. 1246, 194 S.W.2d 25, 27 (1946).

 We have considered defendant's argument that plaintiff proceeded on a theory of common law conversion in the lower court, and that she is held to that theory. While plaintiff has emphasized conversion, she also alleged (and her evidence tended to prove) embezzlement and misappropriation by defendant in violation of § 570.030, RSMo 1978, and she reasserted them in her motion for a new trial. She has advanced that theory in her brief here as well. A trustee or agent may embezzle or misappropriate trust funds and it is not neces-

sary to prove the plaintiff's legal title and right to immediate possession in order for her to recover for the embezzled or misappropriated funds. Beneficial or equitable ownership in the plaintiff is sufficient. *Tucker v. Kaiser,* 176 S.W.2d 622 (Mo. banc 1944); *State v. Anderson,* 232 S.W.2d 909 (Mo.1950); 29A C.J.S. Embezzlement, § 19(1) (1965). We do not mean to say that it is the statute which creates the civil cause of action in plaintiff. If we were saying this, we would have to pause to consider whether the criminal statute gives a private person a civil cause of action. *See Jensen v. Feely,* 691 S.W.2d 926, 927–928 (Mo.App.1985). Our point is instead that the acts punishable as the crime of embezzlement give rise to a civil action for money had and received, without regard to the statute punishing the acts as a crime. *See Steele v. Cross, supra,* 366 S.W.2d at 441; *Campbell v. Webb, supra,* 258 S.W.2d at 602; *Johnson-Brinkham v. Central Bank of Kansas City, supra;* 22 S.W. at 815; *Sidebottom v. Sidebottom, supra,* 255 S.W. at 356; *Carl Byoir & Associates v. Tsune-Chi Yu, supra,* 112 F.2d at 886.

In sum, we hold that the petition stated a cause of action for money had and received, and that the evidence favorable to the plaintiff and which tended to support the allegations of the petition made a case upon that theory. It follows that the court erred in sustaining defendant's motion to dismiss at the close of plaintiff's evidence and the judgment must therefore be reversed.

The trial judge, Judge Robert L. Koffman, who heard the case upon assignment by the Supreme Court, wisely took defendant's motion to dismiss at the close of plaintiff's evidence (which he later sustained) under advisement and heard all the evidence offered by the parties. The matter has been fully tried. We judicially know that Judge Koffman continues to serve as an associate circuit judge of Pettis County in the Eighteenth Judicial Circuit. There is no necessity for a new trial. The case is remanded to the trial court for judgment upon the merits of the case.

Judgment reversed and cause remanded to the trial court for further proceedings consistent with this opinion.

All concur.