Karen TRIMBLE d/b/a A–Advanced Bail Bonds, Plaintiff–Appellant,

v.

Timmi Ann PRACNA and Treveillian Heartfelt, Defendants–Respondents.

Nos. 23149, 23243, 23232.

Missouri Court of Appeals, Southern District, Division One.

June 11, 2001.

Motion for Rehearing or Transfer to Supreme Court Denied July 9, 2001.

Application for Transfer Denied Aug. 21, 2001.

R. Lynn Myers, Richard D. Crites, Springfield, for Appellant.

Charles B. Cowherd, Kristen S. Beerly, Husch & Eppenberger, L.L.C., Springfield, for Respondent.

PARRISH, Presiding Judge.

Karen Trimble (plaintiff) is appellant in Nos. 23149 and 23232. Timmi Ann Pracna (defendant Pracna) is cross-appellant in No. 23243. The appeals are directed to the trial court's action in a case originating from dealings between a bail bondsman, plaintiff, and Treveillian Heartfelt (defendant Heartfelt) and defendant Pracna. The case arose from a contract and application for a $325,000 bail bond defendant

Pracna obtained from plaintiff to secure the release of defendant Heartfelt from the Taney County, Missouri, jail. This court affirms No. 23243 as to defendant Pracna's counterclaim, dismisses No. 23232, affirms No. 23149 as to Counts IV and V of plaintiff's amended petition, and reverses No. 23149 as to damages on Count I and all issues on Counts II and III of plaintiff's amended petition. The case is remanded for new trial as to damages on plaintiff's claims in Count I and all issues on plaintiff's claims in Counts II and III of her amended petition.

## I. Case History

The attorneys who represented plaintiff at trial were the third group of attorneys she had engaged. The trial judge was the fourth judge assigned to the case. The first three recused.

The pleading on which plaintiff's case was tried is an amended petition. The original petition stated a one-count action against defendant Pracna and defendant Heartfelt for breach of contract. It was directed to a bond indemnity agreement relative to a bail bond that secured defendant Heartfelt's release from the Taney County jail.

The amended petition states five counts. Count I is for breach of contract. It is against both defendants. It is the same action that was stated in the original peti-

tion. The remaining counts are against defendant Pracna. They are a claim for fraud (Count II), a claim for conspiracy to commit fraud (Count III), a claim for abuse of process (Count IV), and a claim seeking an injunction to bar defendant Pracna from proceeding with litigation in another state (Count V).[1]

Defendant Pracna, in a similar spirit of litigious vigor, produced an eleven-count counterclaim. The counterclaim counts include two claims for money had and received (Counterclaim–Counts I and IX); six claims for fraud (Counterclaim–Counts II, III, IV, V, X and XI); one claim for breach of "fiduciary duties of good faith and fair dealing" (Counterclaim–Count VI); and two claims for outrageous conduct that produced emotional distress (Counterclaim–Counts VII and VIII). Counterclaim–Counts II, IV, VII and X include requests for punitive damages.[2]

### A. Plaintiff's Claim Against Defendant Heartfelt

The original petition was filed October 24, 1996. Return of service on defendant Heartfelt was filed November 19, 1996. It shows personal service on November 12, 1996.

The trial court entered an interlocutory order of default as to defendant Heartfelt May 15, 1997. On August 13, 1998, the trial court filed a document entitled "Judgment." It recites that plaintiff presented

---

**1.** No date-file stamp appears on the copy of the amended petition that is part of the legal file component of the record on appeal. A certificate of service shows the mailing of the service copy of the amended petition on August 17, 1998. An August 18, 1998, docket entry by the trial court reveals the filing of a motion by plaintiff to file an amended petition. An August 26, 1998, entry shows entry of appearance by the attorneys who now represent plaintiff and states "MOTION TO AMEND IS SUSTAINED." Defendant Pracna has not objected to the contents of the legal file. This court therefore accepts the

copy of the amended petition that appears in the legal file as a copy of the petition on which this case was tried.

**2.** The litigants obviously do not subscribe to this court's suggestion that there can be advantages in shunning multi-count petitions in favor of pleadings that focus on a central issue, or, at best, a few key issues that available evidence would likely support. See Sanders v. Hartville Milling Co., 14 S.W.3d 188, 192 n. 1 (Mo.App.2000).

evidence; that defendant Heartfelt had been served with process but had never answered or entered his appearance; that interlocutory judgment of default had been entered May 15, 1997. It states defendant Heartfelt signed a "Bond Indemnity Agreement" in exchange for plaintiff posting a $325,000 appearance bond in Taney County; that he defaulted on the bond by failing to appear as its terms required and fleeing the jurisdiction of the court in which the bond was filed. The trial court found plaintiff had been damaged in the amount of $197,925.30; that under the terms of the bond contract, she was also entitled to attorney fees in the amount of $65,975.10. The trial court further found that defendant Heartfelt was entitled to credit in the amount of $58,500 for funds previously paid by defendant Pracna to plaintiff. The document concluded with the declaration:

> THEREFORE IT IS ADJUDGED AND DECREED
>
> That the Plaintiff take and is awarded judgment against the Defendant, Treveillian Heartfelt in the total amount of $ *205,400.40* and that the Plaintiff is awarded her costs against the Defendant, Treveillian Heartfelt in the amount of $150.00.

B. *Plaintiff's Claims Against Defendant Pracna*

Plaintiff's claims against defendant Pracna and defendant Pracna's counterclaims against plaintiff proceeded to jury trial. Trial commenced March 15, 1999, with voir dire and opening statements. Plaintiff began presenting evidence March 16. Trial continued through March 19 when it was adjourned until March 29. On March 29 trial resumed. At the close of plaintiff's case-in-chief, the trial court granted motions of defendant Pracna for directed verdict as to Counts II and III of the amended petition and granted "partial directed verdict" as to Count I. Trial resumed March 31 with defendant Pracna presenting evidence. Defendant Pracna's evidence was followed by rebuttal evidence. Instructions were read to the jury, closing arguments were made and the case submitted.[3]

The claims that were submitted were plaintiff's breach of contract claim (Count I) and defendant Pracna's claims for breach of "fiduciary duties of good faith and fair dealing" (Counterclaim–Count VI) and money had and received for "funds ... in excess of the amount of defendant Pracna's obligations under the bail bond contract." (Counterclaim–Count IX).

The jury returned a verdict for plaintiff on Count I of the amended petition (Verdict A) and assessed damages in the amount of $41,500. Verdicts on the two counterclaims defendant Pracna submitted (Verdicts B and C) were returned in favor of plaintiff.

Defendant Pracna filed motions entitled "Defendant's Motion to Correct and Amend Judgment" and "Motion for Judgment Notwithstanding Verdict, Alternative Motion for Remittitur and Alternative Motion for New Trial." Both motions were filed April 19, 1999.

On April 30, 1999, plaintiff filed a pleading entitled "Plaintiff's [sic] to Reopen and Amend Judgment and Motion for Addittur and Motion for New Trial." It included two requests for relief. The first sought "addittur to put the Judgment against the Defendant, Timmi Ann Pracna at

---

3. Judgment on the pleadings had been entered in favor of defendant Pracna on Counts IV and V of plaintiff's amended petition prior to trial. Defendant Pracna submitted only Counterclaim–Counts VI and IX. The remaining nine counterclaim counts were withdrawn.

$205,400.40 with interest at 9% from August 13, 1998." The second, subtitled "Plaintiff's Motion for New Trial," sought a new trial on the issue of damages on Count I of the amended petition and a new trial on all issues on Counts II, III and IV.

## C. The Trial Court

The trial court entered judgment May 21, 1999, as to the claims tried to the jury in accordance with the verdicts. The judgment recites that pursuant to a motion for judgment on the pleadings, Counts IV and V of the amended petition were stricken. It awarded judgment for plaintiff against defendant Pracna for $41,500 and costs. The nine counterclaim counts that defendant Pracna did not submit (Counterclaim Counts I, II, III, IV, V, VII, VIII, X and XI) were dismissed with prejudice.

A June 1, 1999, docket entry states, "NOTICE SET FOR 6/18/99 AS TO DEFENDANT'S MOTION TO CORRECT AND AMEND JUDGMENT, FILED." There are two docket entries dated June 18, 1999. The first states a correction to an earlier docket entry. It notes an earlier docket entry stated judgment was signed May 20, 1999; that the statement was erroneous; that the judgment was signed May 19, 1999.

The second of the June 18 docket entries sustained defendant Pracna's motion to set aside the judgment. It further set "argument" for Monday, June 21, 1999, at 2:00 p.m. and states the parties were notified.

On June 21, 1999, plaintiff, by written motion, moved to set aside the June 18 order that granted defendant Pracna's motion to set aside the judgment. The motion to set aside the June 18 order asserted that a hearing had been scheduled for June 18 on defendant Pracna's motion to set aside the judgment; that plaintiff's attorney notified the trial court that he was experiencing an illness; that the trial court continued the hearing and advised plaintiff's attorney he would be notified of a new date. The motion further asserted plaintiff's attorney was notified a short time later that the hearing would be held Monday, June 21, 1999. It alleged that later the same day, plaintiff's attorney was told the trial court had, nevertheless, entered an order sustaining defendant Pracna's motion to set aside the judgment. Plaintiff contended that under the circumstances set forth in the motion, she had not been given reasonable notice and opportunity to be heard in opposition to defendant Pracna's motion to set aside the judgment. Plaintiff's motion requested the trial court to set aside the June 18 order and declare it void.

On August 19, 1999, the trial judge signed a document designated "Judgment." The circuit clerk's date-file stamp states the document was filed August 23, 1999.[4] The document recites that the case was tried March 15–19 and on March 29 and March 31, 1999. It states the trial court "sustained Defendant Pracna's motion for directed verdict at the close of Plaintiff's evidence as to Counts II and III" and had "previously entered a judgment on the pleadings in favor of Defendant Pracna as to Counts IV and V of Plaintiff's First Amended Petition." The document states the jury rendered verdict for plaintiff on the remaining count of the amended petition and assessed damages at $41,500; that the jury rendered verdicts for plaintiff on defendant Pracna's two remaining counterclaims.

The "Judgment" then recites:

4. A docket entry dated "8/20/99" states the "Judgment" was "signed and entered" on

"8/19/99."

FURTHER, at the close of Plaintiff's evidence, this Court sustained in part Defendant Pracna's Motion for Directed Verdict as to Count I of Plaintiff's Petition and limited Plaintiff's claim for damages to the sum of approximately Sixty-six Thousand Five Hundred Thirty-nine and $^{20}/_{100}$ Dollars ($66,539.20), before applying any credit for Defendant Pracna's payment of Fifty-eight Thousand Five Hundred and No/100 Dollars ($58,500.00) which Plaintiff admitted receiving from Defendant Pracna, and the Court finds that in closing argument Plaintiff's counsel instructed the jury that the Court would apply a credit of Fifty-eight Thousand Five Hundred and No/100 Dollars ($58,500.00) against the jury's award. In any event, had the jury applied the credit to which Defendant Pracna is entitled, the maximum amount of any award which could have been granted to Plaintiff on Count I of her Petition against Defendant is the sum of Eight Thousand Thirty-nine and $^{60}/_{100}$ Dollars ($8,039.60). Therefore, it is apparent that the jury did not provide Defendant Pracna with credit for her Fifty-eight Thousand Five Hundred and No/100 Dollars ($58,500.00) payment to Plaintiff so that the Court finds that the jury verdict herein should be reduced to zero after applying said credit. [Footnote reference omitted.]

FURTHER, this court having entered on August 13, 1998 an interlocutory judgment against Defendant Treveillian Heartfelt (herein "Defendant Heartfelt") on the same claims which were alleged by Plaintiff and submitted to the jury on Count I of Plaintiff's First Amended Petition. The Court now determines that the amount of the judgment against Defendant Heartfelt should be reduced in accordance with the judgment entered herein on Count I of Plaintiff's First Amended Petition.

That text is followed by decretal pronouncements consistent with those recitals. Each pronouncement is preceded by the declaration, "IT IS FURTHER ORDERED, ADJUDGED and DECREED...." The pronouncements provide that plaintiff shall recover nothing against defendants on Count I of the First Amended Petition; that the remaining counts of the amended petition are dismissed; that judgment is entered for plaintiff on Counterclaim–Counts VI and IX that were submitted to the jury; that the remaining counterclaim counts are dismissed. The document pronounces that "any other claim or relief requested by a party hereto is hereby denied" and assesses costs to defendants.

## II. Plaintiff's Appeals

Some of the issues plaintiff raises are directed to procedural matters that occurred in the trial court. The *"Case History"* recites those events. Other facts related to a particular point will be included in the discussion of that point. Although the record reveals facts related to defendant Heartfelt's romantic pursuits that rival what an imaginative, sensation-seeking novelist might pen, the temptation to recite those facts has been resisted.

Plaintiff raises nine points on appeal. The first three points are directed to the trial court's actions with respect to entering a final judgment. Points IV and V are directed to the trial court's calculation of and award of (or failure to award) damages. Point VI is directed to the directed verdict on Count II of plaintiff's amended petition, the fraud claim. Point VII is directed to the directed verdict on Count III of the amended petition, the conspiracy claim. Point VIII is directed to the partial directed verdict on Count I, the breach of contract claim. Point IX is directed to evidentiary rulings at trial.

*A. Plaintiff's Points I–III; Setting Aside "Judgments"*

■ Plaintiff's Points I and II are directed to the trial court setting aside its "May 19, 1999 judgment." Although plaintiff alludes to a "May 19, 1999 judgment," what she appears to have intended to address is the judgment purportedly entered May 21, 1999. The handwritten date, "May 19, 1999," appears to the left of the trial judge's signature at the bottom of that document. However, the clerk's date-file stamp on the face of the document is May 21, 1999. *See* Rule 74.01(a).

The action plaintiff contends was erroneous was a June 18, 1999, order setting aside the May 21 judgment against defendant Pracna. Point I is based on the premise that the trial court's action was in response to an oral motion by defendant Pracna. Point II is based on the premise that the action was taken on the basis of the trial court's own motion. The order about which plaintiff complains is a docket entry dated June 18, 1999, that states, "COURT SUSTAINS DEFT'S MOTION TO SET ASIDE JUDGMENT AND SETS ARGUMENT BEFORE THIS COURT ON MONDAY, JUNE 21, 1999 AT 2:00 P.M. PARTIES NOTIFIED."

Apart from action directed to authorized post-trial motions, the time in which a trial court retains control over a judgment is governed by Rule 75.01. It provides, as applicable to Points I and II:

The trial court retains control over judgments *during the thirty-day period after entry of judgment* and may, *after giving the parties an opportunity to be heard and for good cause,* vacate, reopen, correct, amend, or modify its judgment within that time. Not later than thirty days after entry of judgment the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on mo-

tion of a party, and every order granting a new trial shall specify the grounds therefor.... [Emphasis added.]

Defendant Pracna's Motion to Correct and Amend Judgment sought relief "pursuant to Civil Rule 75.01." It was apparently based on a belief that the May 21, 1999, document denominated "Judgment" was a final judgment. If it were a final judgment, the trial court would have had authority to vacate, reopen, correct, amend or modify it through June 21, 1999 (June 20, the 30th day following the purported entry of the judgment, was a Sunday). *See* Rule 44.01(a).

Assuming, arguendo, that the trial court's action granting defendant Pracna's motion to set aside the May 21 judgment occurred without notice to plaintiff, that action is not subject to Rule 75.01 scrutiny because the May 21 judgment was not final. The May 21 judgment did not dispose of the claim against defendant Heartfelt.

An interlocutory judgment of default on plaintiff's claim against defendant Heartfelt was entered May 15, 1997. A subsequent "judgment" assessing damages against defendant Heartfelt was entered August 13, 1998. Plaintiff's amended petition was filed sometime later. *See* n. 1, *supra.* The filing of the amended petition rendered the previously entered judgment of default (and, consequently, the assessment of damages against defendant Heartfelt) a nullity. *See Shelby v. Slepekis,* 687 S.W.2d 231, 236 (Mo.App.1985).

■ When an amended petition is filed, a former petition becomes an abandoned pleading that receives no further consideration in the case. *Id.* "An abandoned petition becomes a mere 'scrap of paper' insofar as the case is concerned." *Id.,* citing *Welch v. Continental Placement, Inc.,* 627 S.W.2d 319, 321 (Mo.App.1982).

An interlocutory judgment cannot rest on an abandoned petition. The interlocutory judgment is by definition tentative requiring final action in the assessment of damages. When the petition under which liability has been determined is abandoned before the judgment matures to finality and a new petition is interposed, the issue of liability is reopened and the prior adjudication lapses.

*Shelby, supra.* It matters not that the amended petition duplicated allegations that had been in the earlier petition. *Id.*

■ The result of the foregoing is that at the time the trial court undertook to enter the May 21, 1999, judgment, the claim against defendant Heartfelt was unresolved. Since the May 21 judgment did not resolve all issues as to all parties, the May 21 judgment was not a final judgment, but was in the nature of an interlocutory order. As such, Rule 75.01 constraints on trial courts' actions with respect to final judgments were not applicable. A trial court may at any time before final judgment, open, amend, reverse or vacate an interlocutory order. *Woods v. Juvenile Shoe Corp. of America,* 361 S.W.2d 694, 695 (Mo.1962). Points I and II of plaintiff's appeals are denied.[5]

■ Point III is directed to the trial court setting aside the August 13, 1998, default judgment against defendant Heartfelt. It asserts the trial court erred in "reducing plaintiff's judgment against Treveillian Heartfelt from $205,400.40 to zero" in the August 19, 1999, judgment. Plaintiff argues that the action was taken in violation of Rule 75.01 in that the trial court undertook to take action on the August 13, 1998 judgment without giving the parties notice or an opportunity to be heard. She further argues "that the [trial] court ... lost its jurisdiction to act on July 29, 1999,[6] and no one filed a motion to change or set aside the plaintiff's judgment against Treveillian Heartfelt, and more than one year had passed since the Heartfelt judgment was entered...."

As discussed with respect to Points I and II, the filing of plaintiff's amended petition rendered the interlocutory judgment in default that had previously been entered against defendant Heartfelt a nullity. There was no existing default judgment to be set aside. Point III is denied.

*B. Plaintiff's Points IV and V; Damages*

---

**5.** Regardless of the filing of the amended petition, another circumstance in this case would have affected the finality of the May 21, 1999, judgment. Defendant Pracna was a surety on the contract between plaintiff and defendant Heartfelt pursuant to which plaintiff issued the bail bond that is the basis of plaintiff's lawsuit. As such, the obligation of defendant Pracna and defendant Heartfelt was a joint obligation. *Howard Const. Co. v. Teddy Woods Const. Co.,* 817 S.W.2d 556, 561 (Mo. App.1991). *Shelby v. Slepekis, supra,* explains what occurs under these circumstances:

> Where two defendants are jointly liable and one defaults, a verdict of liability against the defaulting defendant may not include an assessment of damages. The judgment of liability is interlocutory only and stands in abeyance pending trial on the merits as

to the liability of the non-defaulting defendant and an assessment of damages if both be found liable.

687 S.W.2d at 236. Thus, in this case, as in *Shelby,* even if the interlocutory judgment of default that was entered against defendant Heartfelt May 15, 1997, had survived the filing of the amended petition, that judgment would not have matured to finality by assessment of damages. The damages purportedly assessed August 13, 1998, were premature. Since the May 21, 1999, judgment did not address the subject of damages with regard to defendant Heartfelt, it was not a final judgment. *See Shelby, supra,* at 236.

**6.** As discussed, *supra,* the June 21 judgment was not a final judgment; thus, the constraints of Rule 75.01 do not apply.

Point IV asserts trial court error in entering the August 19, 1999, judgment and in reducing plaintiff's damages on Count I to zero. Point V contends the trial court erred in not awarding plaintiff damages in the amount initially entered against defendant Heartfelt upon his default.

Plaintiff argues the trial court lacked authority to change the "May 19, 1999, judgment" from and after July 29, 1999.[7] She further argues "the [trial] court was mistaken in finding that plaintiff's counsel mislead [sic] the jury by saying that the court would take [defendant Pracna's] offset and in assuming that the jury did not follow the court's instructions and in assuming that the jury did not take any offset against the plaintiff's damages, thus impeaching the jury's verdict."

The first complaint in Point IV, that "the court no longer had jurisdiction to change the May 19, 1999, judgment" is without merit. As heretofore explained, the May 21 judgment was not a final judgment; Rule 75.01 did not preclude the trial court from exercising control over the purported judgment more than 30 days following its entry. Furthermore, the complaint that the trial court had no authority to act after July 29, 1999, is directed to the last date defendant Pracna filed a post-trial motion, April 30, 1999. Plaintiff argues the trial court was required to rule on defendant Pracna's post-trial motion within 90 days, i.e., on or before July 29, 1999. Final judgment had not been entered on April 30, 1999. Therefore, any post-trial motions were premature and deemed filed immediately after judgment became final. *Milligan v. Helmstetter*, 15 S.W.3d 15, 26

(Mo.App.2000); *Sanders v. Hartville Milling Co.*, 14 S.W.3d at 217.

The remaining complaints in plaintiff's Point IV are directed to findings included in the judgment entered August 23, 1999. The findings to which plaintiff's Point IV is directed are:

FURTHER, at the close of Plaintiff's evidence, this Court sustained in part Defendant Pracna's Motion for Directed Verdict as to Count I of Plaintiff's Petition and limited Plaintiff's claim for damages to the sum of approximately Sixty-six Thousand Five Hundred Thirty-nine and 20/100 Dollars ($66,539.20), before applying any credit for Defendant Pracna's payment of Fifty-eight Thousand Five Hundred and No/100 Dollars ($58,500.00) which Plaintiff admitted receiving from Defendant Pracna, and the Court finds that in closing argument Plaintiff's counsel instructed the jury that the Court would apply a credit of Fifty-eight Thousand Five Hundred and No/100 Dollars ($58,500.00) against the jury's award. In any event, had the jury applied the credit to which Defendant Pracna is entitled, the maximum amount of any award which could have been granted to Plaintiff on Count I of her Petition against Defendant is the sum of Eight Thousand Thirty-nine and 60/100 Dollars ($8,039.60). Therefore, it is apparent that the jury did not provide Defendant Pracna with credit for her Fifty-eight Thousand Five Hundred and No/100 Dollars ($58,500.00) payment to Plaintiff so that the Court finds that the jury verdict herein should be reduced to zero after applying said credit.[8]

---

7. As discussed previously the "judgment" referenced was the one the trial court filed May 21, 1999. The May 19, 1999, date appears next to the trial judge's signature on the document. It is referred to in this opinion as the May 21 judgment.

8. Consistent with other aspects of this case that are, at best, non-conventional, the trial court included a footnote in the text of the findings portion of the judgment. The footnote has no bearing on this appeal. It has been deleted from the quotation.

■ These findings purport to analyze two sequences of events that occurred during trial. The first was the trial court having "sustained in part" a motion for directed verdict as to Count I of plaintiff's claim against defendant Pracna. This occurred at the close of plaintiff's evidence. The second was a statement made by one of plaintiff's attorneys in closing argument.[9] Based on those analyses, the trial court entered judgment that did not comport with the jury's verdict on Count I of plaintiff's amended petition. Point IV asserts this was error.

■ To meaningfully address plaintiff's Point IV, a series of events commencing with defendant Pracna's motion for directed verdict require review. The trial court's orders with respect to defendant Pracna's motion for directed verdict were made by docket entry dated March 29, 1999. It states:

> DEFT. FILES DEFENDANT'S MOTION FOR JUDGMENT AT CLOSE OF PLTF'S EVIDENCE.[10] AS TO COUNT III SUSTAIN MOTION FOR DIRECTED VERDICT. AS TO COUNT II SUSTAIN MOTION FOR DIRECTED VERDICT. AS TO COUNT I PARTIAL DIRECTED VERDICT.

The reference to Count I in the trial court's docket entry does not state a ruling. The operative word "sustain" does not appear in the entry with respect to the motion for directed verdict as to Count I; neither does any other operative word such as "overruled" or "denied." The docket entry, as it relates to Count I, is not decisive. The transcript, however, includes a lengthy discussion about "Count I."[11] It begins with the trial judge's directive, "Now let's talk about Count I." It includes the judge's assessment of evidence related to business dealings between plaintiff and defendant Pracna and a discussion of "notes" the judge had taken regarding plaintiff's efforts to apprehend defendant Heartfelt. The judge talked about types of expenses that had been the subject of testimony. He said certain expenses needed to "come off" and surmised, "[T]here will probably need to be quite a few withdrawal instructions."

Items of claimed expenses and related testimony were discussed, after which the trial judge stated, "I'll do a partial directed verdict on Count I." The extent of the "partial directed verdict" was not stated. More discussions followed concerning the trial judge's recollection of particular segments of testimony. References were made to "the bond premium due" and to specific amounts of costs attributable to

9. The trial judge mischaracterized plaintiff's trial attorney's remarks to the jury. He stated the attorney "instructed the jury" concerning action the trial court would take following the trial court rendering its verdict. An attorney does not "instruct" the jury. That is a function the trial judge performs by giving jury instructions that channel the jury's deliberations and thereby enable it to reach a verdict. *Seitz v. Lemay Bank and Trust Co.,* 959 S.W.2d 458, 464 (Mo. banc 1998).

10. There is no pleading included in the legal file with the title, "Defendant's Motion for Judgment at Close of Pltf's Evidence." The motion included in the legal file that has been

certified by the clerk of the trial court as a document included in that court's files is entitled "Defendant's Motion for Directed Verdict Against Plaintiff at the Close of Plaintiff's Evidence." It is filed on behalf of defendant Pracna and its prayer for relief requests "judgment in her favor at the close of plaintiff's evidence." This court infers that to be the document to which the March 29 docket entry related to directed verdicts refers.

11. The discussion of "Count I" covers ten pages of the trial transcript. No explanation appears as to why that discussion was reported or transcribed.

various persons and expense items. The judge observed that there was evidence that expenses of $1,000, $1,500, $15,000 and $4,300 had been incurred by named individuals and that there had been "phone expenses of $8,810.30, motel of 540[sic]." It was stated that "[b]ounty hunter's expenses" would "have to be taken out or split up." This was followed by references to "car rental" and "mileage for [plaintiff] of $2,214.30."

At the close of the evidence, the claims that would be submitted to the jury were identified. They included plaintiff's Count I and defendant Pracna's Counterclaim-Counts VI and IX. The issues presented by plaintiff's Point IV relate to plaintiff's Count I and defendant Pracna's Counterclaim-Count IX.

Plaintiff's Count I was her claim for breach of contract. Defendant Pracna's Counterclaim Count IX was her claim for damages for amounts she contended plaintiff had been overpaid. Count IX alleged defendant Pracna paid plaintiff $58,500; that the payment of that amount exceeded "any liabilities Defendant Pracna may have to Plaintiff arising out of any transaction between Plaintiff and Defendant Pracna." The instructions the trial court gave the jury included Instruction Nos. 5, 6 and 7, "withdrawal instructions." The "withdrawal instructions" were part of the general instructions given. They were not included with the packet of instructions applicable to plaintiff's claim.[12]

Instruction No. 5 told the jury "[t]he issue of whether or not defendant ... Pracna defrauded plaintiff ... into writing the bail bond contract in question and any evidence regarding that issue or the damages resulting therefrom" had been with-

drawn from the case. The jury was told "not to consider such evidence" in reaching a verdict. Instruction No. 6 withdrew "[t]he issue of whether or not defendant ... Pracna conspired with [defendant] Heartfelt to defraud plaintiff." It instructed the jury not to consider "such evidence" in reaching its verdict.

Instruction No. 7 listed ten "items" in separately numbered paragraphs that the jury was told not to consider in arriving at its verdict with respect to plaintiff's alleged damages. Those items were (1) bounty fees claimed by three individuals and three business entities; (2) fees paid to or due a named business entity; (3) air transportation expenses; (4) mileage expenses of plaintiff "exceeding $2,214.33"; (5) interest on bank loans; (6) expenses advanced to bounty hunters; (7) lost income of plaintiff; (8) "loss of income from any bonds not written by plaintiff between August 23, 1995 and December 18, 1995"; (9) alleged lost rent payments from certain properties; and (10) fees paid or due a named attorney. Only one item, number 4, mileage expenses of plaintiff, referred to a sum of money.

The verdict-directing instruction for plaintiff's breach of contract claim told the jury it was to return its verdict for plaintiff if it believed:

First, plaintiff ... and defendant ... Pracna entered into an agreement whereby plaintiff ... agreed [sic] issue a bail bond for the release of [defendant] Heartfelt and defendant ... Pracna agreed [sic] indemnify [plaintiff] for her liability, loss, damages, attorney fees and expenses [plaintiff] sustained in making the bond, defending any action

---

12. The packet of instructions on Count I of the amended petition was Instruction Nos. 9, 10 and 11. Instruction No. 9 was the explanatory instruction. Instruction No. 10 was plaintiff's verdict-directing instruction. Instruction No. 11 was plaintiff's damage instruction.

under the bond, enforcing and protecting the collateral, and locating and producing [defendant] Heartfelt in Court, and

Second, plaintiff performed her agreement, and

Third, defendant [Pracna] failed to perform her agreement, and

Fourth, plaintiff was thereby damaged.

The damage instruction given with respect to plaintiff's claim, Instruction No. 11, was patterned after MAI 4.01 [1980 Revision].[13] The jury was told:

If you find in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe she sustained as a direct result of the occurrence mentioned in the evidence.

Instruction No. 13, the verdict-directing instruction directed to defendant Pracna's Counterclaim–Count IX, instructed:

Your verdict must be for defendant Timmi Pracna, if you believe:

First, defendant Pracna forwarded the sum of $58,500.00 to plaintiff to be used for the purposes set out in the bail bond contract, and

Second, the funds were in excess of the amount of defendant Pracna's obligations under the bail bond contract, and

Third, defendant Pracna has made demand upon plaintiff Trimble to return the excess funds, and

Fourth, plaintiff Trimble has refused to return the excess funds, and

Fifth, defendant Pracna was thereby damaged.

The trial court did not instruct the jury to limit its award to plaintiff, in the event it found in her favor, to a stated amount. Neither the verdict-directing instruction for plaintiff's claim nor the damage instruction imposed monetary restrictions. This was the posture of the case at the time of closing arguments.

"Jury instructions are the means by which courts inform the jury as to the factual elements it must find to determine liability in a civil case." *Seitz v. Lemay Bank and Trust Co.*, 959 S.W.2d 458, 464 (Mo. banc 1998)(Robertson, J., dissenting). "A jury instruction is a 'direction given by the judge to the jury concerning the law of the case.'" *State v. Storey*, 901 S.W.2d 886, 892 (Mo. banc 1995), quoting *Black's Law Dictionary* 856 (6th ed.1990). In Missouri, jury instructions are given before attorneys make closing arguments. They provide a framework on which the attorneys may argue to the jury. This is what plaintiff's attorney did in the portion of his argument that the trial court found "instructed the jury that the Court would apply a credit … against the jury's award."

Plaintiff's attorney's remarks were made in the final segment of plaintiff's closing argument, the segment that followed defendant Pracna's closing argument. They appear to be in response to remarks made by defendant Pracna's attorney. Defendant Pracna's attorney commented on plaintiff's request for attorney fees as part of the damages plaintiff claimed she sustained as a result of defendant Pracna's

---

**13.** "Though this instruction is primarily for tort actions, its use in breach of contract actions has been given judicial approbation and is congruent with current case law." *Perkinson v. Burford*, 623 S.W.2d 30, 33 (Mo. App.1981), citing *Gottlieb v. Hyken*, 448 S.W.2d 617, 621 (Mo.1970); *North County School District R–1 v. Fidelity & Deposit Co.*, 539 S.W.2d 469, 480 (Mo.App.1976); *McAtee v. Greenspon*, 439 S.W.2d 187, 190 (Mo.App. 1969); and *Stamm v. Reuter*, 432 S.W.2d 784, 786 (Mo.App.1968).

alleged breach of contract. He characterized plaintiff's calculation of attorney fees that should be part of plaintiff's damages as "[a]bsurd" and "[s]hocking." He then discussed various items of damages claimed by plaintiff and suggested an amount he deemed the maximum she should be allowed. He suggested, however, that a "credit" was due defendant Pracna; that she was due a refund of $31,973.73.

Defendant Pracna's attorney reviewed the verdict forms that would be available for the jury's use. He called the jury's attention to Verdict A, the form for use in returning the verdict on plaintiff's claim for breach of contract. Referring to the line for entering in whose favor the jury would find, he told the jury, "We've asked you to fill in this line right here and say Timmi Pracna." He then called the jury's attention to Instruction No. 13, the verdict-directing instruction on defendant Pracna's claim for payment of funds to plaintiff in excess of what defendant Pracna alleged had been owed. Using the amount he had argued was due defendant Pracna as a "credit," $31,973.73, he told the jury:

> When you look at these expenses that we've presented to you, the over payment and the amount due back to Ms. Pracna is $31,973.73. Roughly $32,000. And that's on Verdict B. That's how you fill that in.
>
> You put in Timmi Pracna on this line, $32,000 on this line. That's the way that could be filled out.

Verdict B was the form available for the jury's use in returning its verdict on defendant Pracna's Counterclaim–Count IX, her claim for funds she contended had been paid plaintiff in excess of what plaintiff was owed.

Plaintiff's counsel responded by telling the jury:

Now, then they sit there and ridicule on us asking for attorney's fees—well, okay, let's look at this. *The way they have submitted this case is not for an offset.* No. If it was an offset, what he says would be correct.

They have submitted a claim. Let me tell you about the claim. The only way, under Instruction 13, that they can recover back anything, or even get a credit for the 58,5[00] is if you find that the funds were in the excess of the amount Defendant Pracna's obligations were under the bond contract. And if you don't find that, you can't find in her favor and she gets zip back. Nothing.

*And she could have asked the Court to do an offset, but she didn't do that.* And it's not our choice to tell them how to do their case or how to practice law. It's theirs. This woman didn't pay her in excess.

(Emphasis added.)

Plaintiff's response to defendant's argument was an explanation of what the jury instructions stated. Plaintiff's attorney told the jury the only way defendant Pracna could receive payment for what she alleged had been paid plaintiff in excess of what was owed would be for the jury to find in her favor on Counterclaim–Count IX.

Plaintiff's argument to the jury was consistent with the argument of defendant Pracna's attorney insofar as how the jury would be permitted to provide defendant Pracna an "offset" for what she alleged had been paid in excess of what was owed. The argument was consistent with the instructions the jury was given. The jury found for plaintiff on her claim for breach of contract and returned Verdict A in her favor assessing damages in the amount of $41,500. The jury returned Verdict B on defendant Pracna's counterclaim for recov-

ery of excess funds and Verdict C on defendant Pracna's counterclaim for allegedly wrongfully recording quitclaim deeds in favor of plaintiff. Thus, the jury awarded plaintiff damages of $41,500 but awarded defendant Pracna nothing.

The trial court received the verdicts after which the attorneys were asked if there was anything further. Plaintiff's attorney responded in the negative. Defendant Pracna's attorney responded, "Not at this time, Your Honor." There were no further proceedings.

 Plaintiff's Point IV is well taken. The finding in the judgment that plaintiff's attorney misled the jury is not supported by the record. The jury is presumed to have followed the trial court's instructions. *Rains v. Herrell,* 950 S.W.2d 585, 588 (Mo.App.1997). The jury rendered general verdicts consistent with the instructions that were given. "After the reception of a verdict and the discharge of the jury, the court may correct or amend it in mere matters of form, but never in matters of substance." *Thorne v. Thorne,* 350 S.W.2d 754, 757 (Mo.1961). The judgment the trial court entered was not supported by the verdicts rendered. The trial court did not have authority to enter a judgment that was not consistent with those verdicts.

 Point V is based on the nature of the obligation of defendant Pracna and defendant Heartfelt. Any obligation owed by defendant Pracna to plaintiff is derived from her surety status on defendant Heartfelt's contractual obligation. A surety's obligation is joint with the obligation of the party for whom security was given. *Howard Const. Co. v. Woods Const. Co.,* 817 S.W.2d 556, 561 (Mo.App.1991). On that basis, plaintiff moved for summary judgment against defendant Pracna seeking damages in the amount the trial court had undertaken to award against defendant

Heartfelt by reason of the default judgment entered against him—the sum of $205,400.40 as designated by the August 13, 1998, "Judgment." That motion was denied.

Later, after trial of plaintiff's claims against defendant Pracna, plaintiff moved to amend the judgment to award the same amount of damages the trial court had undertaken to assess against defendant Heartfelt. That motion was denied.

Point V contends the trial court erred by denying a pretrial motion for summary judgment and in denying the motion to amend the judgment to award damages in an amount different from what the jury awarded. With respect to the claim of error in denying plaintiff's motion for summary judgment, "[d]enial of a motion for summary judgment does not present an appealable issue." *Shelter Mut. Ins. Co. v. DeShazo,* 955 S.W.2d 234, 238 (Mo.App. 1997). As to plaintiff's claim that the trial court should have granted her motion to amend the judgment against defendant Pracna by entering judgment for damages in the same amount as had been assessed against defendant Heartfelt, the default judgment that was entered against defendant Heartfelt is a non sequitur. As discussed previously, it was rendered a nullity upon the filing of plaintiff's amended petition. *Shelby v. Slepekis, supra; Welch v. Continental Placement, Inc., supra.* Point V is denied.

### C. *Plaintiff's Points VI and VII; Directed Verdicts*

 Points VI and VII are directed, respectively, to the trial court granting directed verdicts as to Counts II and III of plaintiff's amended petition. Count II was plaintiff's claim for fraud. Count III was her claim for conspiracy to commit fraud. The directed verdicts as to Counts II and III were granted at the close of plaintiff's

case-in-chief. Plaintiff argues there was sufficient evidence of the elements of the claims to have submitted them to the jury; that the trial court erred in directing verdicts for defendant Pracna on Counts II and III.

*Beshore v. Gretzinger,* 641 S.W.2d 858 (Mo.App.1982), explains the process for appellate review of directed verdicts for a defendant on a plaintiff's claim:

> A directed verdict is a drastic measure, and on review we must consider all of the evidence in the light most favorable to the plaintiff, accept as true that which is not entirely unreasonable or opposed to physical laws, accord to plaintiff the benefit of all favorable inferences deducible from the evidence, reject all unfavorable inferences, and disregard defendant's evidence except insofar as it aids plaintiff's case. "When challenged on appeal, a verdict directed against plaintiff will fall 'unless the facts in evidence and the legitimate inferences to be drawn from such facts, are so strongly against the plaintiff as to leave no room for reasonable minds to differ.'" *Barnett v. M & G Gas Co.,* 611 S.W.2d 370, 371 (Mo.App.1981), quoting from *Abel v. Campbell 66 Express, Inc.,* 378 S.W.2d 269, 271 (Mo.App.1964).

*Id.* at 862. *See also Cabinet Distributors, Inc. v.. Redmond,* 965 S.W.2d 309, 312 (Mo.App.1998).

■ The elements of fraud, the claim asserted in Count II, are (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of the truth, (5) the speaker's intent that the representation should be acted upon, (6) ignorance of the falsity of the representation by the person to whom it was made, (7) that person's reliance on its truth, (8) that person's right to rely thereon, and (9) consequent and proximate injury to the person to whom the representation was made. *Cabinet Distributors, Inc., supra.*

Count II of plaintiff's amended petition alleges defendant Pracna fraudulently induced plaintiff to provide a bail bond that permitted the release of defendant Heartfelt by making certain representations, including:

. . .

> b. That [defendant] Heartfelt had lived with her in Idaho for the last ½ year; and

. . .

> g. That Defendant, ... Heartfelt had always appeared for his Court hearings and other Court requirements in the past in other criminal cases he had pending against him; . . . .

This court's review, using the standard described in *Beshore,* consists of ascertaining whether there was substantial evidence with respect to alleged representations, coupled with legitimate inferences, from which reasonable minds could conclude the elements required to prove fraud were shown. If there was, Point VI, the allegation of error directed to plaintiff's fraud claim, must be granted.

The trial court's granting of the motion for directed verdict on Count II was based on its finding that plaintiff relied only on the collateral and defendant Pracna's credit check in deciding to provide the bail bond on which defendant Heartfelt was released from confinement. The trial judge concluded that because the collateral provided for the bail bond existed and defendant Pracna's credit check was accurate, plaintiff did not rely on the truthfulness of the other representations made by defendant Pracna.

■ There was evidence, however, that plaintiff relied on factors other than the collateral that was pledged as security for

the bail bond and the credit report on defendant Pracna. Plaintiff required defendant Pracna to complete an application for the bail bond before plaintiff wrote the bond. It sought detailed information about the person who was to be bonded out of jail, in this case defendant Heartfelt. It required disclosure of any alias or nickname of the person. Defendant Pracna underlined the word, "nickname" and wrote "Chance" in the space the form provided. After the bond was written and defendant Heartfelt failed to appear for court as the bond contract required, plaintiff learned that defendant Heartfelt had used over 50 aliases. There was evidence that defendant Pracna knew defendant Heartfelt had aliases other than Chance; that she had previously arranged for bail bonds in cases in which he was charged with offenses under names other than Treveillian Heartfelt. Plaintiff testified that she would not have written the bond had she known defendant Heartfelt had aliases. She testified that she relied on the bond application.[14]

■ Two aliases defendant Heartfelt had used were Rick Arden Williams and Guenther Chance Edelbauer. Plaintiff was asked if she would have written bonds for him had she known he used those aliases. She answered that she would not have. She explained, "Because people that use aliases, that's the first sign that they—there's a good possibility that they, they'd try and disappear. If you're using aliases, you don't want people to find you." When a specific representation is made to induce action the person to whom it is made has a

right to rely on the representation. *Essex v. Getty Oil Co.*, 661 S.W.2d 544, 550 (Mo. App.1983).

Plaintiff testified defendant Pracna told her defendant Heartfelt had never missed a court date. Plaintiff was asked, "Would you have written this bond, or any of the bonds, if [defendant Pracna] would not have assured you that he had always made his court dates before?" She answered, "No, I would not."

■ Substantial evidence is required on each element in order to make a submissible case of fraud. *Eidson v. Reproductive Health Services*, 863 S.W.2d 621, 626 (Mo.App.1993). "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case." *Hurlock v. Park Lane Medical Center, Inc.*, 709 S.W.2d 872, 880 (Mo.App.1985).

■ In determining if a submissible case was made on any element, a plaintiff's evidence is presumed to be true and the plaintiff is given the benefit of all reasonable and favorable inferences to be drawn from the evidence. *Eidson v. Reproductive Health Services, supra.* Missing evidence is not supplied nor is a plaintiff given the benefit of unreasonable, speculative or forced inferences. *Id.* The question of whether evidence in a case is substantial and whether inferences are reasonable are questions of law. *Id.* If there is substantial evidence in the form of testimony on a question of fact in a jury case, the belief or disbelief of the testimony is a question for the jury to decide. *Benoit v. Missouri*

---

**14.** A representation can occur by omission as well as by direct statement. Silence can be a fraudulent misrepresentation if circumstances impose a duty to speak and the person deliberately remains silent. *Birdsong v. Christians*, 6 S.W.3d 218, 225 (Mo.App.1999). The contract pursuant to which plaintiff provided the bail bond for defendant Heartfelt stated that the statements made therein were provided as an inducement for the bondsman, plaintiff, to execute the bond being sought. The contract stated that the statements made by the persons seeking the bond were true. The contract and application for the bond are signed by defendant Heartfelt and defendant Pracna.

*Highway and Transp. Com'n.,* 33 S.W.3d 663, 667 (Mo.App.2000). The jury is the sole judge of the credibility of witnesses and the weight and value of their testimony. *Gatley v. Wal–Mart Stores, Inc.,* 16 S.W.3d 711, 713 (Mo.App.2000). It may believe or disbelieve any portion of the testimony. *Id.*

This court holds that plaintiff's testimony that she relied on representations by defendant Pracna concerning aliases of defendant Heartfelt and defendant Heartfelt having always appeared for court dates was substantial evidence. Plaintiff made a submissible case on Count II of her amended petition. The believability of the evidence was a decision to be made by the jury. The trial court erred in granting a directed verdict for defendant on Count II. Point VI is granted. Plaintiff is entitled to a new trial on Count II of the amended petition.

■ Point VII is the same allegation of error that was set forth in Point VI except it is directed to the trial court granting a directed verdict on Count III, the conspiracy claim. Plaintiff contends a submissible case was made; that the trial court erred in not submitting the conspiracy to commit fraud claim to the jury.

■ A civil conspiracy is an agreement or understanding between two or more persons to do an unlawful act or use unlawful means to do an otherwise lawful act. *Mark VII, Inc. v. Barthol,* 926 S.W.2d 128, 131 (Mo.App.1996); *Missouri Highway & Transp. Com'n v. Commerce Bank of Kansas City, N. A.,* 763 S.W.2d 172, 176 (Mo. App.1988). Both defendant Heartfelt and defendant Pracna signed the bond contract and application for bond in which defendant Heartfelt's numerous aliases were not disclosed. The contract and application for bond resulted in plaintiff providing bail bonds that permitted defendant Heartfelt's release from the Taney County jail.

As discussed with respect to Point VI, there was evidence that defendant Pracna made misrepresentations intended to persuade plaintiff to provide the necessary bail bonds for defendant Heartfelt's release from jail. There was evidence that she and defendant Heartfelt engaged in a common purpose to persuade plaintiff to provide the bail bond. In addition to the evidence of misrepresentations on the contract and application for bond, there was evidence of a continued alliance after defendant Heartfelt was released that a jury could conclude demonstrated continuation of a plan by defendant Pracna and defendant Heartfelt to deceive plaintiff.

After defendant Heartfelt was released, he and defendant Pracna drove to Tennessee. The bond required defendant Heartfelt to attend all court hearings. A hearing was scheduled for August 23, 1995. On the day when the hearing was scheduled, defendant Heartfelt left Tennessee to drive to Florida. Defendant Pracna was assuring Missouri authorities that defendant Heartfelt was on his way to Missouri. Defendant Heartfelt failed to appear.

Plaintiff caused extensive searches to be made for defendant Heartfelt during which time defendant Pracna repeatedly provided false clues concerning his whereabouts. There was evidence that defendant Pracna dissuaded plaintiff from extending the search to Florida where defendant Heartfelt was headed. Defendant Pracna was sending money to defendant Heartfelt while he was traveling to Florida.

Viewing the evidence favorable to plaintiff and presuming plaintiff's evidence to be true, plaintiff made a submissible case of conspiracy to commit fraud, the claim asserted by Count III of the amended petition. Point VII is granted. Plaintiff made a submissible case as to Count III of

the amended petition. She is entitled to a new trial on Count III.

Upon remand, the trial court should consider the nature of a civil conspiracy action. "Civil conspiracy is not a cause of action in and of itself; rather, it extends liability based on an underlying wrongful act." *Mark VII, Inc. v. Barthol, supra.* Conspiracy has to do only with the joint and several liability of co-conspirators. *Gott v. First Midwest Bank of Dexter,* 963 S.W.2d 432, 437–38 (Mo.App.1998); *Preferred Physicians Mut. Mgmt. Group v. Preferred Physicians Mut. Risk Retention,* 918 S.W.2d 805, 815 (Mo.App.1996). A conspiracy bears only on liability of joint tortfeasors. *Mills v. Murray,* 472 S.W.2d 6, 13 (Mo.App.1971). It is not an independent action. *Id.*[15] Thus, the allegations of conspiracy to commit fraud in Count III of the amended petition add nothing to Count II, the fraud claim, other than an assertion of joint and several liability relative to actions by the two defendants (albeit that the claims in Count II and Count III are asserted only against defendant Pracna). Upon retrial the trial court should ascertain from the evidence adduced whether Counts II and III are alternative theories of recovery that require election of remedies before submission to a jury. *See Gage v. Morse,* 933 S.W.2d 410, 420 (Mo. App.1996); *but compare Freeman v. Myers,* 774 S.W.2d 892, 895 (Mo.App.1989).

D. *Plaintiff's Point VIII; "Partial Directed Verdict" on Count I—Damages on Count I*

Point VIII contends the trial court erred in granting a directed verdict as to the issue of damages with respect to Count I. Plaintiff relies on the requirement that plaintiff's evidence with respect to the issues addressed by the "partial directed verdict" on Count I must be viewed in the light most favorable to plaintiff. She argues that the issue of damages on Count I of the amended petition was a fact question for determination by the jury. She contends the motion for directed verdict at the end of plaintiff's evidence did not state the grounds with respect to Count I on which the trial court granted the motion.

Rule 72.01(a) prescribes the procedure for requesting a directed verdict at the close of an opponent's evidence. It requires a motion for directed verdict to "state specific grounds therefor." If a motion for directed verdict fails to state specific grounds for the relief it requests, the trial court has no basis on which it may act. *Kincaid Enterprises, Inc. v. Porter,* 812 S.W.2d 892, 894–95 (Mo.App.1991). Likewise, failure to state specific grounds in a motion for directed verdict preserves nothing for consideration by an appellate court. *Id.*

Defendant Pracna's motion for directed verdict at the close of plaintiff's evidence included ten numbered paragraphs that stated "grounds" for the relief sought. Four of the paragraphs, Nos. 1, 4, 8 and 10, can be construed to be applicable to Count I, the breach of contract claim. The other paragraphs are directed to the fraud claim (Count II) and the conspiracy to

---

**15.** " 'A civil conspiracy is proved by evidence that two or more persons have an agreement or understanding to do an unlawful act, and that, in pursuance of this agreement or understanding, they proceed to carry out their unlawful purpose to the damage of the plaintiff.' *Preferred Physicians Mut. Management Group v. Preferred Physicians Mut. Risk Retention,* 918 S.W.2d 805, 815 (Mo.App.1996). The conspiracy is not what is actionable. *Id.* An unlawful act done in furtherance of a conspiracy is what is actionable. *Id.* '[T]he conspiracy has to do only with the joint and several liability of the co-conspirators.' *Id.* '[I]f the underlying act was not unlawful, there can be no claim for civil conspiracy.' *Blaine v. J.E. Jones Const. Co.,* 841 S.W.2d 703, 713 (Mo. App.1992)." *Gott,* 963 S.W.2d at 437–38

commit fraud claim (Count III). The paragraphs applicable to Count I provide:

Defendant herewith moves the court to direct a verdict in its favor at the close of plaintiff's evidence on the following grounds:

1. The evidence is insufficient, as a matter of law, to either support or form a basis for a verdict in favor of plaintiff and against defendant.

. . .

4. No evidence has been offered or received that raises a jury question concerning the allegations contained in plaintiff's pleading.

. . .

8. Plaintiff has failed to establish that she has substantially performed all of her obligations under the contractual agreements between plaintiff and defendant and, in particular, plaintiff's evidence establishes that plaintiff in fact breached the agreement between the parties with respect to the filing of the quit claim deeds which were executed by defendant Pracna as part of the agreement between the parties whereby plaintiff posted bail bonds on behalf of defendant Heartfelt.

. . .

10. Plaintiff has failed to establish any contractual obligation of defendant Pracna to plaintiff in that there was a material alteration to the bond application form signed by defendant Pracna after her signature was applied to said document in that the dollar amount of the bond referred to therein was increased from $25,000 to $325,000 and plaintiff has failed to establish that defendant consented to the alteration of said document.

The motion concludes with the prayer, "WHEREFORE, defendant Pracna prays for judgment in her favor at the close of plaintiff's evidence."

Defendant Pracna's motion for directed verdict at the close of plaintiff's evidence makes no request for relief directed to any particular evidence plaintiff presented regarding damages she sustained from defendant Pracna's breach of contract. The allegations in defendant Pracna's motion are similar to allegations discussed in *Kincaid Enterprises, Inc. v. Porter, supra,* at 894–95, and *McRaven v. F–Stop Photo Labs, Inc.,* 660 S.W.2d 459, 460-61 (Mo. App.1983). The allegations are, at best, bare generalities that, as in *McRaven,* boil down to contentions that plaintiff failed to make a submissible case. They do not identify evidence related to damages as an issue on which defendant Pracna is entitled to a directed verdict. Nothing in the motion approaches a statement of "specific grounds" related to damages. The motion was not an effective pleading. It presented no basis for relief in the trial court.

As observed in the discussion of Point IV, the only action the trial court took to manifest its "partial directed verdict" on Count I was to give a withdrawal instruction, Instruction No. 7, (as one of the general instructions) regarding evidence of damages plaintiff alleged she sustained. The granting of the "partial directed verdict" was error. Consequently, there was no basis for giving Instruction No. 7 as the means for effecting that action. Point VIII is granted. A new trial is required on the issue of damages in Count I.

*E. Plaintiff's Point IX—Admissibility of Evidence*

■ Plaintiff's Point IX contends the trial court erred in sustaining objections to evidence plaintiff tendered "concerning plaintiff's loss of real property she pledged as security for a loan to help pay the expenses of searching for and returning [defendant] Heartfelt to Missouri after he

jumped bail. . . ." Plaintiff argues this was evidence of damages she sustained; .that the issue to which it was directed was a question of fact and, therefore, the jury should have been permitted to consider it.

The evidence plaintiff argues should have been admitted is directed to certain real estate she owned at the time she provided defendant Heartfelt's bail bond. The land was 12 acres of what plaintiff characterizes as "agricultural land." The land was pledged to the court in which the charge against defendant Heartfelt was pending as security for the bond. At that time plaintiff valued the land at $123,000. She was permitted to testify that she had represented that the land was worth $123,000 in using it as security for the bail bond she provided for defendant Heartfelt.

Plaintiff contends the property had value for future development; that she had plans to start a development business with it. She was not permitted to testify about her plans for the land on the basis that its future development was speculative. She, likewise, was not permitted to testify about the value she claimed the property would have if developed.

Plaintiff obtained a $50,000 loan that was secured by the property in question. The loan proceeds were used to pay expenses incurred in searching for defendant Heartfelt after he failed to appear on his bond. Plaintiff contended she had been unable to repay the loan; that, as a result, she sold the property to her parents.

Plaintiff urges that "[t]his court should declare that upon retrial of this case . . . [plaintiff] should be allowed the opportunity to expand her evidence concerning this specific loss and to have the jury decide whether she should recover for this loss

from Defendant, . . . Pracna." This court declines.

■ An appellate court has no way of discerning what evidence will be tendered on a particular issue that may arise upon retrial of a case. It has no way of determining the manner in which whatever evidence may be available will be presented. Plaintiff's request is, in essence, a request for an advisory opinion. Absent rare exceptions concerning matters of public interest likely to recur, appellate courts do not render advisory opinions.[16] *Jantz v. Brewer*, 30 S.W.3d 915, 920 (Mo.App.2000).

■ This court notes, nevertheless, that admissibility of evidence is within a trial court's sound discretion. *Ellis v. Jurea Apartments, Inc.*, 875 S.W.2d 203, 209 (Mo.App.1994). Cases are not reversed on the basis of evidentiary rulings absent substantial or glaring injustices. *Id.* Evidence may be excluded on the basis that it is speculative. *See Koontz v. Ferber*, 870 S.W.2d 885, 890 (Mo.App.1993). This court finds no abuse of discretion regarding the trial court's rulings on the objections about which Point IX complains. Point IX is denied.

### III. Defendant Pracna's Cross–Appeal

Defendant Pracna presents one point on appeal. She contends the trial court erred in denying her post-trial motions requesting that the trial court enter judgment in her favor in the amount of $17,000. She contends it was undisputed that she paid plaintiff funds in excess of the amount of expenses plaintiff incurred as a result of any breach of contract by defendant Pracna. Defendant Pracna argues that her post-conviction motions seeking entry of

**16.** For a discussion of the exception to this principle involving matters of public interest likely to recur, *see State ex rel. Missouri Cable Television Ass'n v. Missouri Public Service*

*Com'n*, 917 S.W.2d 650, 652 (Mo.App.1996), and *Citizens for Safe Waste Management v. St. Louis County Air Pollution Control Appeal Bd.*, 896 S.W.2d 643, 644 (Mo.App.1995).

judgment in her favor in the amount of $17,000 should have been granted.

This same argument was the basis for defendant Pracna's Counterclaim Count IX. The jury returned its verdict in favor of plaintiff and against defendant Pracna on that claim. Defendant Pracna's cross-appeal is an attempt to thwart the jury's findings based on the argument that its verdict was the result of miscalculation; that the verdict on Counterclaim Count IX was inconsistent with the verdict on Count I of plaintiff's amended petition.

■■■ Defendant Pracna did not challenge the verdicts when they were returned. The issue she attempts to present by this appeal goes to a matter of substance. As discussed with respect to Point IV of plaintiff's appeal, after a verdict has been received by a trial court and the jury discharged, the court has no authority to correct or amend the verdict in matters of substance. *Thorne v. Thorne,* 350 S.W.2d at 757. The jury's verdicts against defendant Pracna are conclusive. Courts are not afforded the luxury of speculating that the jury meant to do other than what it did. *See Johnson v. Girvin's Estate,* 370 S.W.2d 163, 167 (Mo.App.1963). The issue to which defendant Pracna's cross-appeal is directed was a fact question that the jury found adverse to her. Her point is denied. The portion of the judgment directed to defendant Pracna's cross-appeal is affirmed.

## IV. Summary

The issues framed in the pleadings in this case were unusual. The trial proceedings were, in some respects, unconventional. This court's review disclosed intermingling of fact issues that were for the jury to decide with legal questions that were for the trial court to decide. Rules of procedure were not followed in detail. A retrial of some of the issues is required. On retrial, this court suggests that the fact issues the jury must decide and the questions of law the trial court must determine be carefully segregated to avoid the type of confusion the first trial produced.

Three notices of appeal were filed. They were assigned Nos. 23149, 23232 and 23243 and consolidated before this court. No. 23149 was filed by plaintiff August 6, 1999. It recites the date of the judgment to which it is directed as "May 19, 1999." As discussed elsewhere, the "judgment" the parties have referred to as a May 19, 1999, judgment was rendered on May 21, 1999. This court infers that judgment to be the one to which No. 23149 is directed.

Plaintiff filed No. 23232 September 20, 1999. It recites the date of the judgment to which it was directed as "May 19, 1999/ Aug. 7, 1999." Defendant Pracna filed the notice of appeal in No. 23243 September 27, 1999. It identifies the date of the judgment to which it is directed as "May 19, 1999."

As discussed in this opinion, the final judgment in this case is the August 19, 1999, judgment. It is that judgment that is the subject of any appeal in this case. Plaintiff's notice of appeal in No. 23149 was, therefore, premature. However, "[i]n any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purpose of appeal." Rule 81.05(b). The notice of appeal plaintiff filed in No. 23149 is the one that invoked the jurisdiction of this court. No. 23232 should, therefore, be dismissed as moot.

Although defendant Pracna's notice of appeal identifies the judgment it references as dated May 19, 1999, it is accepted by this court as directed to the final judgment the trial court rendered, the judgment dated August 19, 1999.

There are two pending motions to dismiss the appeals, one filed in No. 23149 by defendant Pracna and one in Nos. 23149 and 23243 filed by plaintiff. Those motions were taken with the case. They are denied.

Four of plaintiff's points on appeal were granted, Points IV, VI, VII and VIII. Points IV and VIII relate to the issue of damages on plaintiff's breach of contract claim, Count I of the amended petition. Point VI involves plaintiff's claim for fraud, Count II of the amended petition, and Point VII is directed to the conspiracy claim, Count III of the amended petition.

■ A new trial is required on all issues with respect to Counts II and III of the amended petition. The errors with respect to Count I pertain only to damages. No error was determined as to the issue of liability on Count I. "Where liability is fairly tried but error is found on the issue of damages, the ends of justice require that the finding of liability be sustained and the case be remanded for trial on the issue of damages only." *Berry v. Federal Kemper Ins. Co.*, 621 S.W.2d 948, 954 (Mo.App.1981). A new trial is required as to the issue of damages on Count I of the amended petition.

Plaintiff urged this court, in the event it found error with respect to Points IV and VIII, to reinstate the damages the jury assessed as to Count I of the amended petition, but to remand the case for consideration of any additional amount of damages plaintiff might be entitled to receive. Plaintiff cited no authority in support of that request. This court does not find that to be a proper procedure. It is appropriate that damages be assessed based on the totality of evidence rather than by piecemeal determination by different groups of fact-finders.

## V. Dispositions

No. 23232 is dismissed. In No. 23243, the judgment as to defendant Pracna's counterclaim is affirmed. In No. 23149, the judgment as to Count I of plaintiff's amended petition is affirmed as to the issue of liability and reversed as to the issue of damages; as to Count II the judgment is reversed; and as to Count III the judgment is reversed. The case is remanded for new trial on the issue of damages in Count I of the amended petition and for new trial on all issues on Counts II and III of the amended petition. In all other respects the judgment is affirmed.

SHRUM and MONGOMERY, JJ., concur.

## ON MOTION FOR REHEARING AND ALTERNATIVE MOTION FOR TRANSFER

PER CURIAM.

Timmi Ann Pracna (defendant Pracna), in a post-opinion motion per Rule 84.17, suggests that any retrial in this case should include retrial of Count IX of her counterclaim. Judgment was rendered against defendant Pracna on Counterclaim–Count IX in accordance with the jury's verdict. No appeal was taken from that part of the judgment. Defendant Pracna nevertheless suggests that Counterclaim–Count IX is so interrelated and interconnected with Karen Trimble's (plaintiff) Count I that trial of one requires trial of the other.

Defendant Pracna relies on *Portell v. Pevely Dairy Co.*, 388 S.W.2d 790 (Mo. 1965), and *Bramblett v. Harlow*, 75 S.W.2d 626 (Mo.App.1934). Both cases were tort actions for negligence arising from automobile accidents. Each accident involved two motor vehicles. In each case the driver of one of the vehicles sued the driver of

the other vehicle. In each case, the driver who was sued counterclaimed on the basis that the driver who instituted the suit was negligent. The judgment in each case was reversed because of errors in verdict-directing instructions. The errors went to issues of liability. Because findings of liability on the respective petitions and counterclaims depended on a jury's evaluation of a single set of facts, new trials were ordered on both the claims raised in the petitions and the claims raised in the counterclaims. This occurred even though the party in each case in whose favor judgment was entered had not appealed. As explained in *Bramblett,* "[T]he petition and counterclaim involve but one and the same principal issue, that of whether [one party or the other] was ultimately responsible for the collision. Upon the question of negligence, the proof of the one cause of action would obviously disprove the other." 75 S.W.2d at 633. Likewise, in *Portell,* the court, in ordering a new trial as to both the claims in the petition and the counterclaim, observed the proof of one would necessarily disprove the other. *See* 388 S.W.2d at 793.

This case differs from the cases on which defendant Pracna relies. It is not a negligence case in which both parties claim the other is liable in tort by reason of a single occurrence. Count I of plaintiff's amended petition is an action for breach of contract. The jury that tried the case found for plaintiff and assessed damages that the trial court initially included in its judgment. The judgment was later changed to allow plaintiff no damages on her Count I contrary to the jury's verdict. As explained in this court's ruling on Point IV of plaintiff's appeal, the trial court did not have authority to enter judgment as to damages that was not consistent with the jury's verdict. But for plaintiff's assertion of error in Point VIII of her appeal, the claim of error directed to the trial court granting a "partial directed verdict" on Count I of the amended petition, this court would have remanded the case with directions to enter judgment on plaintiff's Count I in accordance with the jury's verdict. However, because of the error to which Point VIII of plaintiff's appeal was directed, plaintiff is entitled to a new trial for purposes of assessing damages attributable to defendant Pracna's (and Treveillian Heartfelt's (defendant Heartfelt)) breach of contract.

Defendant Pracna's Counterclaim–Count IX was not premised on a theory of breach of contract. It is an action for money had and received. Unlike claims and counterclaims in *Bramblett* and *Portell,* defendant Pracna's claim was based on a different theory of recovery than Count I of plaintiff's amended petition. Further, unlike those cases, the issue to be determined on retrial is not liability. The jury in this case determined defendant Pracna breached the contract on which plaintiff's Count I is based. It likewise found defendant Pracna was not entitled to recovery from plaintiff on her Counterclaim–Count IX for money had and received. There remains no issue for determination with respect to liability as to the two claims. The only remaining issue is the amount of damages to which plaintiff is entitled on Count I of her amended petition.

In this regard it is apropos to acknowledge the differences in causes of action for breach of contract and for money had and received. The elements plaintiff was required to prove to recover for breach of contract were (1) existence of an enforceable contract between she and defendant Pracna, (2) that mutual obligations had arisen under its terms, (3) that defendant Pracna or defendant Heartfelt had not performed obligations imposed by the contract and (4) that plaintiff was thereby damaged. *Rice v. West End Motors Co.,* 905 S.W.2d 541, 542 (Mo.App.1995).

A claim for money had and received is premised on a claim that money has been paid "which in equity and good conscience ought not to be retained." *Alarcon v. Dickerson,* 719 S.W.2d 458, 461 (Mo.App.1986). It is a legal action based on equitable principles. *Id.* Defendant Pracna's claim for return of funds paid was submitted and argued to the jury independent of plaintiff's claim for breach of contract. The jury found against defendant Pracna. Defendant Pracna's argument that she should have a new trial on her action for money had and received because it is interrelated and interdependent with plaintiff's claim for breach of contract amounts to a change in the theory on which her claim was tried. "An appellate court reviews a case upon only the theory tried, and a party will be held to that theory on appeal." *Matthews v. Moore,* 911 S.W.2d 664, 669 (Mo.App.1995).

The other portions of defendant Pracna's Motion for Rehearing and Alternative Motion for Transfer appear to be rearguments of issues determined by the opinion heretofore filed. The motion is denied.